Merrimack,
No. 5387.

## WALTER B. HILL v. STATE.

Argued October 6, 1965.
Decided February 28, 1966.

*Upton, Sanders & Upton* ( *Mr. John H. Sanders* orally ), for the plaintiff.

*William Maynard,* Attorney General, and *George L. Manias,* Assistant Attorney General ( *Mr. Manias* orally ), for the State of New Hampshire.

BLANDIN, J. The only question transferred is whether the amendment filed on March 3, 1961 to the plaintiff's appeal taken on August 7, 1959, may be allowed under RSA 233:17. The Trial Court found after a hearing that "justice requires that the amendment be allowed, particularly in the absence of any evidence that the State's position has been changed as a result of any

delay, and will allow the amendment, unless as a matter of law it may not properly be allowed."

The following facts were also found by the Court with the agreement of counsel:

The condemnation proceedings were begun on March 10, 1958, in accordance with RSA ch. 236, when the Commissioner of Public Works and Highways, by a petition to the Governor and Council, proposed the construction of a section of the interstate system, known as a limited access highway, from Concord to a point in Tilton. The petition was in broad and general terms and described the proposed location as follows: " . . . the construction of a section of the Interstate Highway System in the City of Concord, and the Towns of Canterbury, Boscawen, North-field and Tilton at the location given below: Beginning at a point in Concord near Locke Road; thence running northerly on new location about seventeen ( 17 ) miles to a point near Route 3 in Tilton, together with connections to Penacook and Boscawen."

RSA 236:2 provides only generally for filing the proposal, appointment of the special committee and later for appointment of the three-man commission. Procedurally, section 2 directs that "the commission . . . may acquire . . . property . . . by . . . condemnation in the same manner as provided for acquiring property of class I highways . . . " which is covered by RSA ch. 233. The statute then goes on to say that all property shall be acquired in fee simple, that the commission may purchase more property than is presently needed and that it may sell or otherwise transfer any surplus. Procedurally RSA ch. 233, which provides for the acquisition of property of Class I highways, governs, and it is not disputed that all requirements of the chapter have been carried out.

On March 14, 1958, the Governor and Council appointed a special committee of three persons to "determine, upon hearing, whether there is occasion for the laying out" of such a highway. RSA 236:2. The notice required by RSA 233:5 of the hearing was given to each owner of land who might be affected by the proposed highway. Each owner received a copy of the Commissioner's proposal, a copy of the appointment of the special committee and notice that a hearing would be held in Tilton on the appointed date of April 21, 1958.

On that day the hearing was held, at which time the proposed section of the highway was described again in general terms as

a seventeen-mile layout. On May 12, 1958, the Commissioner, in a letter to the Governor and Council, attached a report of the special committee and a transcript of the hearing held on April 21. In this report the committee found the necessity for laying out the highway.

On May 15, 1958, the Governor and Council appointed a three-person layout commission. This commission, in accordance with RSA 236:2, was directed to purchase and lay out a highway within the proposed location and to assess the damages sustained. The commission laid out the highway within the proposed location in six separate and distinct layouts, designated as sections, or projects, D through I. The only layouts affecting the plaintiff's land were sections H and I. The commission filed its return of layout of project H on May 14, 1959, with the Secretary of State. On June 11 following, the commission tendered the plaintiff $375 for the parcel of land located within project H being taken from him, which was designated by the Highway Department as parcel No. 1415. The plaintiff refused the tender and on August 7 filed a timely appeal involving the taking of section 1415 and the $375 tender.

Thereafter, on August 19, 1959, the plaintiff was tendered $5,950, which he refused, for land taken as described in the return of layout of project I filed with the Secretary of State on August 19, 1959. This return described the parcels taken as Nos. 1621, 1622, and 1628. On August 31, 1959, the certificate of tender for the above three parcels was filed by the commission with the Secretary of State.

The land included in Nos. 1621 and 1622 adjoin each other. Parcel No. 1628 is about 400 feet north of No. 1622, and No. 1415 previously taken, is approximately two miles south of No. 1621.

The commission later determined that it needed additional land adjoining No. 1628. On November 17, 1959, the plaintiff was tendered $1,555 for a parcel of land described as No. 1628 A. This tender was also refused. The commissioners' return which was filed with the Secretary of State on August 19, 1959 was amended on November 23, 1959. On May 20, 1960, the commission filed a corrected return of the layout previously filed on November 23, 1959, with the Secretary of State. The reason for the correction was to insert the names of Hill and Coveny, which had been inadvertently omitted from the November 23, 1959

return. Also, on May 20, 1960, an amendment of the certificate of tender was filed with the Secretary of State, covering No. 1628 A.

The plaintiff's position, as stated in his brief, is that regardless of how many returns of layout were filed and how many tenders were made to him, the entire proceeding constituted only one action. He says that his appeal taken on August 7, 1959, fulfilled the requirements of RSA 233:17 and that since the appeal was seasonably taken, the amendment to his action should be allowed to include parcels 1621, 1622, 1628 and 1628 A to prevent injustice as provided by RSA 514:9.

The State, however, claims that a separate appeal must be brought by a landowner to determine the amount due him under each return of layout filed with the Secretary of State. As previously stated, the only appeal ever filed by the plaintiff was on August 7, 1959, pursuant to the certificate of tender filed by the commission on June 11, 1959. This concerned only lot No. 1415 and the $375 which had been refused. The State argues that as to returns subsequent to that made on lot No. 1415 and affecting other parcels of the plaintiff's land and filed, as previously set forth, no appeals were taken, and the plaintiff is now barred under RSA 233:17, *supra*. This provision, about which the entire controversy revolves, reads as follows:

"APPEAL OF ASSESSMENT. Any owner of land or other property who has not accepted payment of the sum tendered and who is aggrieved by the decision of the commission in the assessment of damages may appeal therefrom to the superior court for the county in which such land or other property is situate by petition within sixty days after the certificate of tender has been filed with the secretary of state, and not thereafter, unless for good cause shown the superior court may grant the owner an additional sixty days within which to appeal, but in no event shall the time for appeal be more than one hundred twenty days after the certificate of tender has been filed with the secretary of state, and the court shall assess the damages by jury, or by the court without the jury, and award costs to the prevailing party."

The objectives of RSA chs. 233 and 236, considered in their entirety, are to provide a simple, efficient means of taking land by eminent domain for the purpose of constructing highways, and to avoid long delays. *Opinion of the Justices,* 98 N. H. 533, 535. It is obviously important to landowners and to the State

that each know at all times how they stand and which awards are being appealed. It is equally important that the entire proceedings be carried on and completed with all dispatch consistent with doing justice to all parties. See *Opinion of the Justices, supra,* 535, where the matter was discussed at some length.

An appeal by the owner of land taken from the assessment of damages made by a layout commission is purely statutory. *Hayward* v. *State,* 102 N. H. 538, 540; *Opinion of the Justices,* 98 N. H. 533, 534. Therefore the only relief afforded the plaintiff in the situation before us is under RSA 233:17 (*Hayward* v. *State, supra; Opinion of the Justices, supra,* 534 ), and this section must be interpreted in the light of the general intent and practical application of RSA ch. 233. *Niemi* v. *Railroad,* 87 N. H. 1, 9.

It is clear that a paramount purpose of section 17, *supra,* was to fix a final and definite time limit to appeals, and this is demonstrated by the words "*but in no event shall the time for appeal be more than one hundred and twenty days after the certificate of tender has been filed with the secretary of state . . . .* " ( Emphasis supplied ).

The landmark date of the filing of the certificate of tender is stressed because under our law title vests in the State only upon the filing of the return, and not until then does any right of the owner to damages arise. *Edgcomb Steel Co.* v. *State,* 100 N. H. 480, 485. The "return" is the "laying out." *Brown's Petition,* 51 N. H. 367, 368; *Edgcomb Steel Co.* v. *State, supra,* 485.

The words "laying out" and "taking" in our statute relating to eminent domain have the same meaning and are used interchangeably. *Littleton* v. *Company,* 73 N. H. 11, 16.

As hereinbefore stated, in the case of that portion of plaintiff's land designated as No. 1415, a return was filed, a tender made and refused, and a timely appeal taken under section 17, *supra.* However, if thereafter, due to some change in the State's plans, the layout commission had failed to make a return of its proposed layouts of the other several parcels of the plaintiff's land, designated as Nos. 1621, 1622, 1628 and 1628 A, title to these would not have vested in the State and no claim for damages by the plaintiff would have arisen. *Edgcomb Steel Co.* v. *State, supra,* 485. *Cf. Beard* v. *Henniker,* 70 N. H. 197; *Thurston* v. *Alstead,* 26 N. H. 259.

It thus appears that in its practical application (*Niemi* v. *Railroad,* 87 N. H. 1, 9 ) section 17 contemplates the necessity

for an appeal within the specified time limit *after* the certificate of tender is filed completing each successive taking. Only then does the plaintiff's cause of action arise and only by this method can the State be seasonably advised as to which awards are disputed and the proceedings concluded with the desired dispatch.

We find nothing in the pertinent statutes ( RSA ch. 233, 236 ) which would forbid successive layouts as was done here, nor does the plaintiff contest this issue. Indeed, the layout commission, faced with construction problems, the availability of federal funds and perhaps other practical difficulties, would be severely handicapped were the legislation to be so construed. A reasonable interpretation which would avoid such problems seems both proper and desirable. *Peterborough Savings Bank* v. *King,* 103 N. H. 206, 209.

The plaintiff calls attention to the fact that relevant provisions of the statutes speak of " *The* laying out of the highway . . . " ( RSA 233:2 ) and that the commission "shall make *a* return of the highway . . . laid out . . . . " *Ib., s.* 11. He argues that these and other references in the singular in other sections of the pertinent statutes show that the legislative intent implicit in RSA 233:17 was to consider the entire proceedings as one layout wherein only one appeal from the first of successive layouts would be necessary. We do not so interpret this statute.

This appears to dispose of all issues briefed or argued, and the order is

*Motion to dismiss granted.*

All concurred.