Hillsborough
No. 6574

JOHN A. MENGE

v.

CITY OF MANCHESTER & a.

September 28, 1973

*Sulloway, Hollis, Godfrey & Soden* and *Michael R. Callahan (Mr. Callahan* orally) for the plaintiff.

*J. Francis Roche,* city solicitor, by brief and orally, for the defendants.

GRIFFITH, J. This is a petition for injunctive relief under RSA ch. 91-A (Supp. 1972) "right to know law" against the defendants, city of Manchester, John F. McGranahan, William W. Lynch, and Paul R. Martineau, members of the Manchester Board of Assessors. Trial by the Court, *Flynn,* J., who made findings of facts, rulings of law and granted

plaintiff the relief sought. Defendants' exceptions were reserved and transferred by the trial court.

The trial court made the following findings of fact which are not disputed.

"The plaintiff, a professor of economics at Dartmouth College, is conducting through the college's Public Affairs Center a tax study which is expected to be concluded by the middle of this December. The plaintiff seeks to have the defendants release to him for this study a computerized tape of certain field record cards compiled by the city of Manchester for use in arriving at its real estate tax assessments. The plaintiff claims that the information on this tape is vital for his study and that he is entitled to have access to it as a public record under RSA 91-A:4. The defendants maintain that the information contained on this tape is not a public record, but, even if it were, it is exempt from disclosure under RSA 91-A:5 IV in that the tape contains 'confidential, commercial or financial information . . . whose disclosure would constitute invasion of privacy.'

"In 1970, the City of Manchester had all its real estate re-evaluated at a cost of $185,000.00 by Whipple-Magane-Darcy, Inc., a private consulting firm from North Andover, Massachusetts. As part of this reappraisal and revaluation, this firm furnished field record cards for each property that it inspected. These field record cards contained detailed information concerning both land and buildings. These details, *inter alia,* included ownership of the land, whether it is rental property, property factors (topography, improvements, trend of the district), type of occupancy, construction, computations as to how the value was arrived at, and a sketch of the property.

"There are about 35,000 of these field record cards in the Assessors' Office. Most of the data in these field record cards was transferred to a property tax information sheet and was caused by the Assessors to be put on a computerized tape by the Merchants Bank, of Manchester. It cost the City of Manchester the sum of $12,500.00 to put this data on a tape. The annual upkeep cost for this tape amounts to $3,500.00.

"The plaintiff, in connection with the study being con-

ducted by the Dartmouth Public Affairs Center on the structure of property taxes in New Hampshire, sought to examine the information on these field record cards. He sent his representative, Peter May, to the Assessors' Office for the purpose of examining same. Mr. May was advised by the defendant, John F. McGranahan, Chairman of the Board of Assessors, that these records were put on tape by the Merchants Bank and were at the Bank. Mr. May then approached Francis X. McCarthy, Manager of Data Processing at the Merchants Bank, about obtaining this tape. Mr. McCarthy told Mr. May that he could reproduce the original tape but that he would first have to obtain permission from the Board of Assessors. Having a little time on his hands, Mr. McCarthy made a duplicate of the original tape pending clearance from the Board of Assessors. Before giving clearance, Mr. McGranahan requested a letter from the plaintiff asking for this information. Such a letter was sent by the plaintiff to Mr. McGranahan on July 17, 1972. On August 1, 1972, Mr. McGranahan wrote to the plaintiff indicating that this information would not be available but that he could look at the real estate warrant.

"Between the plaintiff's letter on July 17th and Mr. McGranahan's reply on August 1st, Mr. McCarthy, of the Merchants Bank, prepared a duplicate tape. The cost of this reproduction was $45.00 with the tape itself costing about an additional $10.00. The making of such a duplicate tape in no way affects the original tape which remains with the Bank. If anything were privileged on this tape, it could be blocked out by a separate computer program. To prepare such a block-out program, it would cost $40.00 to $100.00 over the cost for the tape of $45.00.

"The plaintiff was willing then, and is now willing, to pay the cost of this tape or any further cost for this data. It is important to have the requested Manchester property tax information, as Manchester represents roughly 1/9th of New Hampshire's population and is unique as it is about the only cosmopolitan city in the State. It is also felt that the information gleaned from Manchester lends itself to verifying data obtained from many towns and the 9 cities involved in this tax study.

"To examine these 35,000 field cards, if the plaintiff were permitted, or wished, to do so, it would take over 200 man days at a cost of about $10,000.00 as one person could check about 150 cards per day. This would cause great disruption in the Assessors' Office. If the tape were made available, the data could be quickly fed into a computer at Dartmouth College, and nobody in the Assessors' Office would be disturbed. Providing the tape to the plaintiff would not endanger the safety of the records or interfere with the duties of the Assessors who have the custody of the original field cards.

"The defendants object to providing the plaintiff with any information beyond what is in the property tax warrant. This warrant, which is composed of 6 bound volumes, lists all the taxable property in Manchester and is available to the public in the offices of the Assessors, City Clerk, and Tax Collector . . . . [A] typical page from the warrant, contains the taxpayer's name, address, location and description of property, net taxable valuation, exemptions, and the net amount of the tax due."

RSA 91-A:4 (Supp. 1972) provides that every citizen has the right to inspect all public records. Defendants' argue that neither the field record cards nor the tapes made from such records are public records within the meaning of the statute. The statute itself contains no definition of a public record and definitions for other purposes predating the "right to know" law are not helpful. *See Lefebvre v. Somersworth Co.*, 93 N.H. 354, 41 A.2d 924 (1945).

The defendants urge us to adopt the restricted view of public records embodied in such decisions as *Dunn v. Board of Assessors*, 1972 Mass. A.S. 901, 282 N.E.2d 385 (1972), where field record cards were held not to be public records. These and other cases deciding that similar material is excluded from the category of public records generally rely upon specific statutory definitions that limit public records to those required to be made by law. *Tagliabue v. North Bergen*, 9 N.J. 32, 86 A.2d 773 (1952); *Wiley v. Woods*, 393 Pa. 341, 141 A.2d 844 (1958).

While not determinative of the question of what constitutes public records, references appearing elsewhere in the statutes are helpful. RSA 48:9 directs the city clerk in the preservation

of public records not needed for present use and refers to public records as "[a]ll records, books, papers, vouchers and documents of every kind which shall be in the hands of any officer, committee, or board of officers of the city, not their individual property, . . . ." RSA 41:58 contains a similar reference to public records to be preserved by town clerks. RSA ch. 8-B which is directed to the management and preservation of state and local records contains the following definition: "'Record' means document, book, paper, photograph, map, sound recording or other material, regardless of physical form or characteristics, made or received pursuant to law or in connection with the transaction of official business . . . ." RSA 8-B:7.

We have recently noted that amendments to the "right to know" law in Laws 1969, 482:2 and Laws 1971, ch. 327 "indicate a disposition to broaden the statute's scope and application" (*Herron v. Northwood,* 111 N.H. 324, 325, 282 A.2d 661, 662 (1971)) and our intention to resolve questions "with a view to providing the utmost information". *Mans v. Lebanon School Bd.,* 112 N.H. 160, 163, 290 A.2d 866, 867 (1972). Certainly the legislative listing in the "right to know" law of specific exemptions and exceptions argues against the narrow interpretation urged by the defendants as do the broad descriptions of materials given in other New Hampshire statutes referring to public records. We hold that the trial court correctly ruled that the material sought here was a public record within the meaning of RSA 91-A:4 (Supp. 1972); *MacEwan v. Holm,* 226 Ore. 27, 359 P.2d 413 (1961); Annot., 85 A.L.R.2d 1086 (1962).

The defendants argue that if we find the records to be public records we should hold them exempt from disclosure under RSA 91-A:5 (Supp. 1972) as "confidential, commercial or financial information . . . whose disclosure would constitute invasion of privacy". We rejected this argument in *Mans v. Lebanon School Board,* 112 N.H. 160, 290 A.2d 866 (1972), where it was urged to prevent public disclosure of individual school teachers' salaries and we cannot accept it here. In the present case, the trial court noted that the information regarded as confidential could be acquired for the most part by a "windshield" or visual inspection of the property. We

538

find nothing in the information here that would qualify as an invasion of privacy. Accordingly, the argument that neither the information is within the statutory exemption from disclosure nor the disclosure constitutes an unconstitutional invasion of privacy can prevail. *Mans v. Lebanon School Bd. supra.*

The ease and minimal cost of the tape reproduction as compared to the expense and labor involved in abstracting the information from the field cards are a common sense argument in favor of the former. RSA 91-A:4 (Supp. 1972) provides that every citizen may "make memoranda abstracts, photographic or photostatic copies" of public records. "Taking into account the practical realities of the situation, we believe it not only possible, but in accord with our law and what seems to be its basic philosophy, to so construe the statute as to permit" plaintiff to have the reproduced tapes at his expense. *Peterborough Savings Bank v. King,* 103 N.H. 206, 209, 168 A.2d 116, 118 (1961); *General Electric Co. v. Dole Company,* 105 N.H. 477, 202 A.2d 486 (1964); *Hill v. State,* 107 N.H. 56, 217 A.2d 502 (1966).

*Defendants' exceptions overruled; remanded.*

All concurred.