Rockingham
No. 80-103

ELEANOR GALLAGHER & a.

v.

TOWN OF WINDHAM & a.

March 11, 1981

*Charles F. Tucker*, of Exeter, and *Thomas J. Gallagher*, of Massachusetts (*Mr. Tucker* and *Mr. Gallagher* on the brief and *Mr. Gallagher* orally), for the plaintiffs.

*Romprey, Beaumont & Mason*, of Salem (*Urville J. Beaumont* on the brief and orally), for the defendants.

*Prunier, Mazerolle & Frasca P.A.*, of Nashua (*Gerald R. Prunier* on the brief and orally), for the intervenors.

*Orr & Reno P.A.*, of Concord (*William L. Chapman* on the brief and orally), for *Concord Monitor & a.*, as amicus curiae.

*R. Christopher Rueggeberg*, of Concord, by brief for Common Cause of New Hampshire, as amicus curiae.

Bois, J. This appeal arises from two separate actions, which were consolidated for trial before a master. In the first action the plaintiff Gallagher alleges that the defendant town violated RSA ch. 91-A (Supp. 1979) by denying her access to and/or copies of plans relating to a proposed industrial park, which the town planning board eventually approved. In the second action the plaintiff Gallagher and other citizens of the town challenge the validity of the planning board's decision under RSA 36:34 (Supp. 1979), asserting that the alleged violation of RSA ch. 91-A (Supp. 1979) renders the planning board decision illegal. The plaintiffs further challenge the board's approval of the plans on the ground that the site plan allegedly included a private access road passing through a residential zone to the proposed industrial park and on the ground that the board unlawfully failed to consider the protective criteria for specific land use, as required by the zoning ordinance, because the site plan did not contemplate a specific use. After a hearing on the merits, the Master (*Jack B. Middleton*, Esq.) recommended dismissal of both actions, which the Court (*Randall*, J.) approved. We affirm.

On April 16, 1979, the plaintiff, Eleanor Gallagher, went to the office of the town building inspector and requested copies of any plans on file which pertained to a proposed industrial park within the town. The building inspector informed her that she could look at the preliminary plans of the project on file but that the town could not provide her with copies of them. The following day, a plaintiff in the second action, Diane Wilkinson, went to the office of the building inspector and requested copies of the plans. Although the building inspector offered her the opportunity to see the plans and make tracings or copies, he again stated that he would not provide her with copies of the plans.

On April 18, 1979, Mrs. Gallagher returned to the building inspector's office to trace any plans on file. She was informed that the plans were not at the office because the chairman of the planning board had removed them for the day. The chairman testified that he had removed the plans for the purpose of conducting a field survey in preparation for a planning board meeting which was scheduled for that evening. He further testified that he had returned the plans to the office prior to the planning board meeting. This was the only occasion that the town could not make the plans available for inspection by the plaintiff. On the evening of April 18, 1979, the developers submitted a new set of plans, which

they later amended, refiled on May 10, 1979, and deposited on May 11, 1979, with the building inspector where they remained on file. Mrs. Gallagher brought suit against the town on May 3, 1979, alleging that the town had denied her access to the plans, which were public records, thereby violating RSA ch. 91-A, the right-to-know statute.

A public hearing on the industrial park site plan was held on May 23, 1979. With the exception of two resubmitted pages, the plans under consideration at this meeting were the same as those deposited with the building inspector on May 11, 1979. On June 6, 1979, the planning board approved the site plan.

■ The plaintiff argues that the town violated RSA 91-A:4 because the absence of the plan from the files of the building inspector on April 18, 1979, constituted a denial of access to public records which is prohibited under the statute. RSA 91-A:4 provides:

> "Every citizen during the regular or business hours of all such bodies or agencies, and on the regular business premises of such bodies or agencies, has the right to inspect all public records, including minutes of meetings of the bodies or agencies, and to make memoranda abstracts, photographic or photostatic copies, of the records or minutes so inspected, except as otherwise prohibited by statute or RSA 91-A:5."

We agree with the finding of the master that the town did not deny the plaintiff access to the plans in violation of RSA 91-A:4, because, with the exception of April 18, 1979, when the chairman had removed the plans from the files on official business, it provided her with the opportunity to inspect, trace, photograph or make notes of the plans. RSA 91-A:4, however, is silent regarding the right of access to public records when they are unavailable. The town argues that the right to access is logically connected to the ability of the town to provide access.

RSA 41:61, however, states that "[n]o town officer having the custody of its public records or documents shall loan the same or permit them to be taken from the place where they are usually kept *except when necessary for the discharge of official duty . . . .*" (Emphasis added.) The statute further provides that public records "shall be open at all proper times for public inspection and exami-

nation." RSA 41:61; *Segre v. Ring,* 102 N.H. 556, 557, 163 A.2d 4, 6 (1980).

The master found that the removal of the plans by the chairman of the planning board for the purpose of conducting a field survey had a legitimate purpose and, therefore, was not accomplished to deny the plaintiff access to the plans. We agree with the master and conclude that it was reasonable for the chairman of the planning board to remove the plans to prepare for the meeting that evening in furtherance of his duties as a town official. Accordingly, the legitimate use of the plans by the public official which resulted in a limited period of their unavailability did not constitute a denial of access to public records.

The plaintiff further argues that the town violated RSA ch. 91-A by refusing to provide her with copies of the industrial park plans. She specifically asserts that the town had a statutory obligation to provide her with photographic or photostatic copies of these public records. The plaintiff also contends that the town had a copying machine at the town hall which the town should have used to produce the requested copies.

The master perceived the real issue to be whether the town violated the provisions of the statute by not providing copies of the plans to the plaintiff.

RSA 91-A:4 does not contain language imposing an absolute duty on towns or agencies to provide copies of public records to citizens. Rather, the statute contemplates that public records be made available to individual members of the public for their inspection and reproduction. This is clear from the language of the statute itself, which provides that "[e]very *citizen* . . . has the right *to inspect* all public records . . . and *to make* memoranda abstracts, photographic or photostatic copies . . . ." (Emphasis added.)

In *Menge v. Manchester,* 113 N.H. 533, 311 A.2d 116 (1973), this court considered whether the plaintiff had a right to obtain a copy of a computerized tape of approximately 35,000 field record cards which the City of Manchester used in assessing real estate taxes. The cost of the copy was approximately $55 whereas the cost of examining each card by hand was estimated to be $10,000. We stated:

> "The ease and minimal cost of the tape reproduction as compared to the expense and labor involved in abstracting the information from the field cards are a common

sense argument in favor of the former. RSA 91-A:4 (Supp. 1972) provides that every citizen may 'make memoranda abstracts, photographic or photostatic copies' of public records. 'Taking into account the practical realities of the situation, we believe it is not only possible, but in accord with our law and what seems to be its basic philosophy, to so construe the statute as to permit' plaintiff to have the reproduced tapes at his expense." (Citations omitted.)

*Id.* at 538, 311 A.2d at 119.

■  In the case before us, the master, although presented with conflicting evidence as to the time consumption and ease involved in having town employees make copies of the plans for the plaintiff, found that the " 'expense and labor' involved in preparing copies of the plans in question on the equipment available to the [town's] employees was [not] minimal." Additionally, unlike the situation in *Menge*, the record is unclear and does not demonstrate that the plaintiff offered to pay the town for any copies were they provided to her. The parties' briefs also are silent on this point. Accordingly, we hold that the finding of the master that the town did not violate RSA ch. 91-A is amply supported by the evidence and is consistent with our holding in the *Menge* decision.

We remind the officials of our municipalities, however, that they are representatives of the citizenry and, although it is not mandatory under the right-to-know law to provide citizens with copies of public records, they should assist the members of the community in obtaining public documents whenever it is reasonable to do so. *Carbonneau v. Town of Rye*, 120 N.H. 96, 99, 411 A.2d 1110, 1112 (1980).

In the second action, Mrs. Gallagher, together with other citizens of the town, argues that the alleged violations of the right-to-know law render the site plan hearing a nullity and the approval of the plans null and void. Because of our holding that the town did not deny the plaintiff in the first action access to the plans and that it did not have a mandatory duty to provide the plaintiff with copies of the plans, we need not consider the argument of the plaintiffs in the second action regarding RSA ch. 91-A.

Our decision is based upon our interpretation of what the statute required and not on our view as to what the statute should require. The statute clearly does not require local officials to furnish copies

but only to permit copies to be made. If the legislature intended to impose such an obligation it can amend the statute.

The plaintiffs in the second action also challenge the validity of the planning board approval of the industrial park site plan on the ground that the approved plan included an allegedly private access road leaving a public highway and passing for 500 feet through a residential zone to the proposed industrial park. Although the plaintiffs characterized the roadway as a private driveway, the master concluded that, based on the evidence presented, the developers had included in their plans a road which met all of the town's requirements for a public road and found that they had posted a bond as security for the completion of the road. The master further recommended that "no occupancy permit [be] issued nor other construction allowed in the Industrial Park unless and until the road is completed in accordance with all of the requirements of the [t]own . . . for a public road."

We recognize that at the time of the site plan approval by the planning board the proposed access to the industrial park was not a public road. We conclude, however, that it was legal and reasonable for the planning board to approve the plans which included a proposed public road. *See Land/Vest Props., Inc. v. Town of Plainfield*, 117 N.H. 817, 379 A.2d 200 (1977); *Garipay v. Town of Hanover*, 116 N.H. 34, 351 A.2d 64 (1976); *KBW, Inc. v. Bennington*, 115 N.H. 392, 342 A.2d 653 (1975). The recommendation of the master that the road meet the town's requirements for a public road prior to use as an access to the park is adequate protection to insure that there is no infringement on interests which the zoning ordinance protects by excluding commercial uses from the residential district. *See* 2 R. ANDERSON, AMERICAN LAW OF ZONING § 9.27 (2d ed. 1976).

Finally, the plaintiffs challenge the planning board action on the ground that the planning board failed to consider protective criteria regarding the use of the industrial park, as required by the zoning ordinance, because the developers had proposed to construct a building on the premises on speculation; that is, with no specific tenant or use contemplated. The plaintiffs claim that the planning board should have considered several factors, including odor, dust, smoke, noise, heat, glare, vibration and radiation prior to approving the site plan and issuing a building permit for a building located in the limited industrial district. WINDHAM, N.H., ZONING ORDINANCE AND LAND USE REGULATIONS, § VI F (1979).

Based on our reading of the record we agree with the master that there was no evidence presented that the town zoning ordinance sought to effectively discourage any development built on speculation. There was also testimony by an individual who assisted in the drafting of the ordinance that it was the intent of the drafters not to exclude speculative building. *See Chagnon v. Union-Leader Co.*, 104 N.H. 472, 477, 190 A.2d 721, 724 (1963).

We further conclude, in agreement with the trial court, that the decision of the planning board adequately protected the interests of the town because no occupancy of the building is allowed until the building inspector issues an occupancy permit. WINDHAM, N.H., ZONING ORDINANCE AND LAND USE REGULATIONS, § VII B (1979). Those sections of the ordinance which set forth protective criteria depending on specific use of the premises must be met prior to issuance of an occupancy permit. We, therefore, conclude that the planning board approval of the industrial park plans was valid.

*Affirmed.*

DOUGLAS and BROCK, JJ., dissented; the others concurred.

DOUGLAS and BROCK, JJ., dissenting: This court has consistently construed RSA ch. 91-A "with a view to providing the utmost information." *Menge v. Manchester*, 113 N.H. 533, 537, 311 A.2d 116, 118 (1973); *see, e.g., Orford Teachers Association v. Watson*, 121 N.H. 118, 427 A.2d 21 (1981); *Mans v. Lebanon School Bd.*, 112 N.H. 160, 163–64, 290 A.2d 866, 867 (1972). The legislature approved that policy when it enacted a preamble to the statute, RSA 91-A:1 (Supp. 1979); and the public did the same when it amended the State constitution. N.H. CONST. pt. I, art. 8 (Supp. 1979). The majority opinion in this case is a retrenchment from that general principle.

While the majority reminds town officials that "they should assist the members of the community in obtaining public documents whenever it is reasonable to do so," it upholds the master's finding that it was reasonable for the town to withhold such assistance in this case. We disagree with that determination. The fact that it might have involved more than minimal expense and labor for the town to help the plaintiff does not mean that it was unreasonable for it to expend that effort. Any analysis of what help a citizen may reasonably expect from his local government must take into consideration the fact that "[a]ll power residing originally

in, and being derived from, the people, all the . . . officers of government are their substitutes and agents, and at all times accountable to them." N.H. CONST. pt. I, art. 8 (Supp. 1979); *see* N.H. CONST. pt. I, art. 1; *Carbonneau v. Town of Rye*, 120 N.H. 96, 99, 411 A.2d 1110, 1112 (1980). Helping citizens gain access to public records is a *part* of a public official's duties under RSA 41:61, not an additional duty.

The facts of this case lead us to doubt that the town took that obligation seriously. The record reveals that the plaintiff Gallagher made repeated requests in several town offices to make copies herself or to have town employees make copies on the town machine, or to borrow one of the six plans to make copies elsewhere. Although the record does not show that she offered to pay for the expense, that fact can be inferred from evidence that she had previously used the town machine to make copies at her own expense. In addition, during oral argument her counsel agreed that his client was willing to pay for town employees to make photocopies of the plans.

The plaintiff did not insist that the town furnish her with copies of the plans, but that would not have been an unreasonable solution. In fact, the attorney general's recent interpretive guidelines on RSA 91-A:4, followed by State agencies, suggest such a course of action:

> "While the Right to Know Law does not require the public body to bear the cost of reproductions, we suggest that public bodies make their reproduction equipment available, if possible, at a reasonable cost in order to comply with the spirit of the law. This does not require the public to use the public body's reproduction facilities."

Office of the Attorney General, State of New Hampshire, Right to Know Law Memorandum at p. 15 (May 2, 1980). The guidelines go on to note:

> "This does not give anyone the right to remove any records from the premises without permission. . . ."

*Id.*, which implies that records may be released *with* permission. That would have been another possible solution in this case. The town could have released the documents to the plaintiff upon posting of a bond, which would have allowed her to make copies of the plans at her own expense through her own labor. If the town is

concerned that such a system would make documents unavailable to other citizens during the time when they are removed for copying, then it can require that a developer submit more than the four copies currently required.

We would not hold that RSA ch. 91-A requires a town to buy a copy machine or to make copies for all citizens who request them, but would only require that a town make every effort to fulfill the spirit of the law by working with its citizens to help them gain access to public documents filed with their government. Reasonable persons could have arrived at a solution to the problems encountered by the parties in this case. The fact that a selectman told the plaintiff that she would receive no more copies of plans indicates that there was friction between the parties which may have contributed to the town's resistance. In order to effectuate the broad purposes of RSA 91-A:4, a town must make more than the minimal efforts at cooperation shown here. *See Menge v. Manchester*, 113 N.H. at 538, 311 A.2d at 119. Accordingly, we dissent.