Merrimack
No. 2014-120

## CAREMARKPCS HEALTH, LLC

v.

## NEW HAMPSHIRE DEPARTMENT OF ADMINISTRATIVE SERVICES

Argued: October 15, 2014
Opinion Issued: April 30, 2015

584

*Ransmeier & Spellman, P.C.*, of Concord (*Daniel J. Mullen* on the brief), and *Foley & Lardner LLP*, of Chicago, Illinois (*John F. Zabriskie* on the brief and orally), for the petitioner.

*Joseph A. Foster*, attorney general (*Richard W. Head*, associate attorney general, on the brief and orally), for the respondent.

BASSETT, J. The respondent, the New Hampshire Department of Administrative Services (Department), appeals an order of the Superior Court (*Smukler*, J.) granting summary judgment in favor of the petitioner, CaremarkPCS Health, LLC (Caremark). The trial court ruled that certain information constituting trade secrets under the New Hampshire Uniform Trade Secrets Act (UTSA), RSA ch. 350-B (2009), is exempt from disclosure under the Right-to-Know Law, RSA ch. 91-A (2013 & Supp. 2014). Specifically, the trial court ruled that disclosure of Caremark's trade secrets by the Department would constitute a "misappropriation" under

the UTSA and, therefore, that the subject information is exempt from disclosure under the Right-to-Know Law. *See* RSA 91-A:4, I (2013). On appeal, the Department argues that the trial court erred in finding that the UTSA prohibits the Department from disclosing Caremark's trade secrets under the "otherwise prohibited by statute" exemption in RSA 91-A:4, I. We affirm.

The following facts are undisputed. In 2010, the Department issued a Request for Proposals (RFP) for pharmacy benefit management services for the State of New Hampshire's health plan. The RFP, in pertinent part, provided that:

> If a request is made to the State to view portions of a proposal that the Vendor has properly and clearly marked confidential, the State will notify Vendor of the request and of the date the State plans to release the records. By submitting a proposal, Vendor agrees that unless the Vendor obtains a court order, at its sole expense, enjoining the release of the requested information, the State may release the requested information on the date specified in the State's notice without any liability to Vendor.

In response to the RFP, Caremark submitted a bid, which ultimately led to a final negotiated contract with the Department. The Governor and Executive Council approved the contract on November 17, 2010. Both the bid and final contract included statements to the effect that certain information set forth in those documents is proprietary and constitutes trade secrets of Caremark.

In 2011, the Department received multiple requests to inspect and copy Caremark's bid and the final contract. Two of the requests were made by Caremark's competitors. Caremark, after being informed by the Department of the requests, responded that certain confidential information contained in the bid and final contract was exempt from disclosure under the Right-to-Know Law. The parties disputed whether certain information was subject to disclosure.

Caremark filed a petition for declaratory and injunctive relief seeking to enjoin the Department from disclosing certain information. Thereafter, the parties filed pleadings that the trial court treated as cross-motions for summary judgment. As part of the summary judgment proceedings, the parties filed a joint stipulation of facts, identified the information as to which they continued to disagree (designated information), and stipulated that the designated information constitutes "trade secrets" as defined in the UTSA, RSA 350-B:1, IV, and constitutes "confidential, commercial, or financial information" within the meaning of the Right-to-Know Law, RSA 91-A:5, IV (Supp. 2014). The parties also agreed that disclosure of the

designated information "could have a chilling effect on the willingness of potential bidders to submit proposals for [pharmacy benefit management] services to a government entity . . . ."

Following a non-evidentiary hearing, the trial court entered summary judgment in favor of Caremark and granted its request for injunctive relief. The trial court ruled that RSA 91-A:4, I, which exempts from disclosure information that is "otherwise prohibited by statute," did not require a balancing of interests. The court further found that Caremark "provided the [D]epartment with the information under the duty of confidentiality." The court concluded that, pursuant to RSA 350-B:1, II(b)(2), the UTSA "prohibits disclosure of the designated information" by the Department and, therefore, the designated information was exempt from disclosure under RSA 91-A:4, I. This appeal followed.

On appeal, the Department asserts that the trial court erred in ruling that the designated information was exempt from disclosure. Although the Department acknowledges that RSA 91-A:4, I, does not require the trial court to engage in the same balancing test required under RSA 91-A:5, IV, *see Goode v. N.H. Legislative Budget Assistant*, 148 N.H. 551, 554 (2002), it argues that the UTSA "does not contain sufficient explicit language prohibiting disclosure to fall under RSA 91-A:4." Rather, the Department contends that the trial court should have engaged in the balancing test applicable to "confidential, commercial, or financial information" under RSA 91-A:5, IV. *See Goode*, 148 N.H. at 554. Caremark counters that the trial court correctly ruled that the UTSA prohibits the disclosure of trade secrets and that, therefore, the designated information is exempt from disclosure under RSA 91-A:4, I. Alternatively, Caremark argues that the designated information is exempt from disclosure under RSA 91-A:5, IV.

In reviewing the trial court's rulings on cross-motions for summary judgment, "we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law." *Bovaird v. N.H. Dep't of Admin. Servs.*, 166 N.H. 755, 758 (2014). "On appeal, we review the trial court's application of law to the stipulated facts *de novo.*" *Nash Family Inv. Properties v. Town of Hudson*, 147 N.H. 233, 234 (2001). This case presents the legal question of whether the UTSA prohibits disclosure of trade secrets and, therefore, whether the designated information falls under the exemption in RSA 91-A:4, I, for information the disclosure of which is "otherwise prohibited by statute."

██ "Resolution of this case requires us to interpret several statutory provisions, including certain provisions of the Right-to-Know Law."

*Lambert v. Belknap County Convention*, 157 N.H. 375, 378 (2008). "The ordinary rules of statutory construction apply to our review of the Right-to-Know Law." *Id.* "Thus, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole." *Id.* "When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used." *Id.* "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." *Id.* "We also interpret a statute in the context of the overall statutory scheme and not in isolation." *Id.*

■ "The purpose of the Right-to-Know Law is to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." *38 Endicott St. N. v. State Fire Marshal*, 163 N.H. 656, 660 (2012) (quotation omitted). "Although the statute does not provide for unrestricted access to public records, we resolve questions regarding the Right-to-Know Law with a view to providing the utmost information in order to best effectuate these statutory and constitutional objectives." *Id.*; *see also* N.H. CONST. pt. I, art. 8. "As a result, we broadly construe provisions favoring disclosure and interpret the exemptions restrictively." *Ettinger v. Town of Madison Planning Bd.*, 162 N.H. 785, 788 (2011). "The party seeking nondisclosure has the burden of proof." *N.H. Civil Liberties Union v. City of Manchester*, 149 N.H. 437, 439 (2003). Therefore, Caremark has the burden of demonstrating that the designated information is exempt from disclosure under the Right-to-Know Law.

RSA 91-A:4, I, in relevant part, states:

> Every citizen during the regular or business hours of all public bodies or agencies, and on the regular business premises of such public bodies or agencies, has the right to inspect all governmental records in the possession, custody, or control of such public bodies or agencies, . . . *except as otherwise prohibited by statute or RSA 91-A:5.*

(Emphasis added.) Caremark argues that, because the UTSA precludes disclosure of the designated information under the circumstances here, that information is exempt from disclosure under RSA 91-A:4, I.

■ The UTSA does not prohibit the disclosure of trade secrets under all circumstances; rather, it provides remedies for the "[a]ctual or threatened misappropriation" of trade secrets. RSA 350-B:2, I. The UTSA defines misappropriation as:

    (a)   Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

    (b)   *Disclosure or use of a trade secret of another without express or implied consent by a person who*:

           (1)   Used improper means to acquire knowledge of the trade secret; or

           (2)   *At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was* derived from or through a person who had utilized improper means to acquire it; or *acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use*; or derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

           (3)   Before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

RSA 350-B:1, II (emphases added).

Caremark argues that, under RSA 350-B:1, II(b)(2), disclosure of its trade secrets by the Department would constitute a "misappropriation" because the Department "knew or had reason to know" that it acquired the trade secrets "under circumstances giving rise to a duty to maintain [their] secrecy or limit [their] use" and Caremark does not consent to their disclosure. Although the Department agrees with Caremark "that a misappropriation occurs under the [UTSA] when (1) a direct commitment is made to maintain the confidentiality of a trade secret, and (2) the trade secret is disclosed without consent," it maintains that there has been no actual or threatened misappropriation of the designated information because, here, it "did neither of those things."

██ Turning to the first prong of the Department's argument, we note that a direct commitment to maintain the secrecy of a trade secret is not required for the disclosure of a trade secret to constitute a misappropriation. Rather, a misappropriation occurs if a person discloses a trade secret without the owner's consent when the person "knew or had reason to know that his knowledge of the trade secret" was "acquired under circumstances

giving rise to a duty to maintain its secrecy or limit its use." RSA 350-B:1, II(b)(2). Here, it is undisputed that the RFP specifically provided that, "to the extent consistent with applicable state and federal law[,] . . . the State will endeavor to maintain the confidentiality of portions of the proposal that [are] clearly and properly marked confidential." Notably, Caremark specifically marked the designated information as confidential and proprietary. Moreover, the contract provides that both parties are under a duty of confidentiality not to disclose trade secrets. Accordingly, we conclude that the Department "knew or had reason to know that [its] knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." *Id.*

The undisputed facts establish that Caremark did not expressly or impliedly consent to disclosure of the designated information. Although the Department contends that submitting a bid constituted "consent" to the disclosure of the designated information, the language of the RFP contradicts this assertion. Caremark marked the information as "confidential," objected to its disclosure, and sought an injunction to prevent disclosure. Disclosure of Caremark's trade secrets under these circumstances would constitute a "misappropriation" as defined by the UTSA.

However, our conclusion that the disclosure would constitute a misappropriation does not end the analysis because the Department next argues that the UTSA does not contain "sufficient explicit language prohibiting" the misappropriation of trade secrets such that the misappropriation falls within the "otherwise prohibited by statute" exemption in RSA 91-A:4, I. We disagree.

■ The purpose of the UTSA is to protect trade secrets from being misappropriated and to provide redress in the event of a misappropriation. *See generally* RSA ch. 350-B. The UTSA grants courts broad authority to protect trade secrets, specifically stating that a court may enjoin an "[a]ctual or threatened misappropriation," and that "affirmative acts to protect a trade secret may be compelled by court order." RSA 350-B:2, I, III. In the event of a misappropriation, the UTSA provides that the complainant may be entitled to recover damages. RSA 350-B:3, I. If the misappropriation is "willful and malicious" the trial court may award "exemplary damages" up to twice the amount of the actual damage award. RSA 350-B:3, II. Moreover, the UTSA expressly provides that it does not displace existing "[c]riminal remedies, whether or not based upon misappropriation of a trade secret." RSA 350-B:7, II(c). Notably, the definition of "property" in the theft chapter of the Criminal Code includes "trade secrets, . . . which the owner thereof intends to be available only to persons selected by him." RSA 637:2, I (Supp. 2014).

■ Given the plain language of the UTSA, the broad remedial powers vested in the courts under the UTSA, as well as the express statement that criminal liability may arise from acts within the scope of the statute, we hold that a "misappropriation" of a trade secret is "prohibited" by the UTSA. Accordingly, because disclosure of the designated information by the Department would be a misappropriation of Caremark's trade secrets under the UTSA, we conclude that disclosure of that information is "prohibited by statute" under RSA 91-A:4, I, and, therefore, we hold that the designated information is exempt from disclosure under RSA 91-A:4, I. Accordingly, we need not address Caremark's argument that RSA 91-A:5 exempts trade secrets from disclosure.

■ We note that our holding is in accord with cases in other jurisdictions, in which courts have held that, if the disclosure of trade secrets would constitute a misappropriation, such information is exempt from disclosure under public record laws. We agree with the Supreme Court of Washington, which held that Washington's public record law "is simply an improper means to acquire knowledge of a trade secret." *Animal Welfare Soc. v. Univ. of Wash.*, 884 P.2d 592, 603 (Wash. 1994) (en banc); *see also State ex rel. Besser v. Ohio State Univ.*, 721 N.E.2d 1044, 1049 (Ohio 2000) ("[W]e hold that trade secrets [are] exempt from disclosure under the 'state or federal law' exemption of [Ohio's Public Records Act]."); *Pfizer Inc. v. Oregon Dept. of Justice*, 294 P.3d 496, 510 (Or. Ct. App. 2012) (concluding that the Oregon Uniform Trade Secrets Act exempts trade secrets from disclosure under the Oregon Public Records Law); *American Family Mut. Ins. v. Missouri Dept.*, 169 S.W.3d 905, 913-14 (Mo. Ct. App. 2005) (affirming the trial court's conclusion that the Missouri Uniform Trade Secrets Act protects trade secrets from disclosure under Missouri's public record laws).

■ ■ Finally, the Department argues that there are overriding public policy reasons that favor disclosure of the designated information. However, the Department makes "[its] argument in the wrong forum." *Petition of Kilton*, 156 N.H. 632, 645 (2007). With the enactment of the UTSA, the legislature made the policy determination to prohibit the misappropriation of trade secrets. Accordingly, misappropriated trade secrets fall squarely within the exemption in the Right-to-Know Law for information the disclosure of which is "otherwise prohibited by statute." RSA 91-A:4, I. To the extent that the Department argues that the legislature improperly balanced policy considerations, we observe that "[m]atters of public policy

are reserved for the legislature, and we therefore leave to it the task of addressing the [Department's] concerns." *Petition of Kilton*, 156 N.H. at 645.

*Affirmed.*

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.