NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2015-0274


DONNA M. GREEN

v.

SCHOOL ADMINISTRATIVE UNIT #55 & a.

Argued: January 7, 2016
Opinion Issued: April 19, 2016


Douglas, Leonard & Garvey, P.C., of Concord (Richard J. Lehmann on the brief and orally), for the plaintiff.


Drummond Woodsum & MacMahon, of Manchester (Matthew R. Serge and Anna B. Cole on the brief, and Mr. Serge orally), for the defendants.


BASSETT, J. The plaintiff, Donna M. Green, appeals a decision of the Superior Court (Anderson, J.) entering judgment in favor of the defendants — School Administrative Unit #55 (SAU), Timberlane Regional School District, Nancy Steenson, and Earl F. Metzler, II — and concluding that the plaintiff was not entitled to receive electronic copies of documents that she had requested from the defendants. We reverse.

The following facts are undisputed or are otherwise supported by the record. The plaintiff is a member of the Timberlane Regional School Board. On

January 21, 2015, she requested budget-related documents from the SAU for herself and the school board. In response, Steenson, the chair of the school board, requested that the plaintiff make a motion for the documents on behalf of the school board.

On January 23, the plaintiff informed the SAU that her document request was made pursuant to the Right-to-Know Law. See generally RSA ch. 91-A (2013 & Supp. 2015). On January 26, the SAU responded that the plaintiff could make an appointment to "see the documents" that she had requested. The plaintiff replied, "in that case, give me the file electronically and we will all save money and time"; in response to this communication, the SAU stated that it had already responded to the plaintiff's request. The plaintiff then noted that her "request is for an electronic file . . . or a paper report, whichever suits the district," and she declined to make an appointment to view the documents. The plaintiff explained that "[a]ll of the documents requested could have been emailed or copied in the time it has taken to answer these excuses for not providing [them]. . . . This isn't that difficult." In response, the SAU stated that the documents that she requested were immediately "available for public inspection."

On January 27 and January 29, the plaintiff again requested the documents in electronic format. The SAU refused to provide the documents in electronic format, again noting that the paper documents were available for inspection. This response by the SAU was consistent with its written policy governing Right-to-Know requests, which states, in pertinent part, that "[m]aterials and/[or] documentation produced to fulfill a Right to Know request shall be subject to a charge [of] $.50 per page" and that "only hardcopies will be produced; no electronic copies will be provided."

On February 3, the plaintiff filed a complaint in superior court alleging that the defendants violated RSA 91-A:4 (2013) by not producing the requested documents in electronic format. The plaintiff requested that the trial court order the SAU to "immediately provide an electronic file [of the requested documents] in a mutually agreeable format." In response, the defendants filed a motion to dismiss in which they argued that they were not obligated to provide the requested documents in electronic format and that they complied with the Right-to-Know Law by making the paper documents available for inspection.

Following a hearing, the trial court concluded that the plaintiff was not entitled to electronic copies of the requested documents. Although the trial court noted that there "may be a strong policy argument to be made" for requiring public entities to produce documents in electronic format, the trial court explained that RSA 91-A:4, V states "in fairly plain language" that "it is the choice of the public entity whether to produce documents in electronic or conventional format." Because the trial court found that the statute provided

2

the SAU with discretion as to whether to provide the documents in electronic format, it entered judgment in favor of the defendants. The plaintiff filed a motion for reconsideration, which was denied. This appeal followed.

On appeal, the plaintiff argues that, under RSA 91-A:4, V, she was entitled to receive the requested documents in electronic format, and, therefore, the trial court's decision to the contrary was error. Although the defendants do not dispute that the requested documents are governmental records that are maintained in electronic format, they argue that the trial court correctly determined that, under RSA 91-A:4, V, they are not required to provide the records to the plaintiff in electronic format.

Resolving this issue requires us to interpret the Right-to-Know Law; therefore, our review is de novo. See Prof'l Firefighters of N.H. v. Local Gov't Ctr., 159 N.H. 699, 703 (2010). "The ordinary rules of statutory construction apply to our review of the Right-to-Know Law." CaremarkPCS Health v. N.H. Dep't of Admin. Servs., 167 N.H. 583, 587 (2015) (quotation omitted). "Thus, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole." Id. (quotation omitted). "When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used." Id. (quotation omitted). "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. (quotation omitted). "We also interpret a statute in the context of the overall statutory scheme and not in isolation." Id. (quotation omitted).

Because the "purpose of the Right-to-Know Law is to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people," we "resolve questions regarding the Right-to-Know Law with a view to providing the utmost information in order to best effectuate these statutory and constitutional objectives." Id. (quotations omitted); see Prof'l Firefighters of N.H., 159 N.H. at 705; see also N.H. CONST. pt. I, art. 8. "As a result, we broadly construe provisions favoring disclosure and interpret the exemptions restrictively." CaremarkPCS Health, 167 N.H. at 587 (quotation omitted).

RSA 91-A:4, V provides, in pertinent part, that:

> In the same manner as set forth in RSA 91-A:4, IV, any public body or agency which maintains governmental records in electronic format may, in lieu of providing original records, copy governmental records requested to electronic media using standard or common file formats in a manner that does not reveal information which is confidential under this chapter or any other law. If copying to electronic media is not reasonably practicable, or if the person or entity requesting access requests a different

method, the public body or agency <u>may</u> provide a printout of governmental records requested, or <u>may</u> use any other means reasonably calculated to comply with the request in light of the purpose of this chapter as expressed in RSA 91-A:1.

(Emphases added.) RSA 91-A:4, IV, in turn, provides, in relevant part, that:

Each public body or agency shall, upon request for any governmental record reasonably described, make available for inspection and copying any such governmental record within its files when such records are immediately available for such release. . . . If a computer, photocopying machine, or other device maintained for use by a public body or agency is used by the public body or agency to copy the governmental record requested, the person requesting the copy may be charged the actual cost of providing the copy, which cost may be collected by the public body or agency.

The plaintiff argues that, although RSA 91-A:4, V uses the word "may," the statute "clearly indicates that the governmental unit is <u>not</u> given unfettered discretion to produce information in any way it chooses." Cf. <u>City of Rochester v. Corpening</u>, 153 N.H. 571, 574 (2006) ("The general rule of statutory construction is that the word 'may' makes enforcement of a statute permissive and that the word 'shall' requires mandatory enforcement." (quotation omitted)). According to the plaintiff, the first sentence of RSA 91-A:4, V provides the defendants <u>not</u> with the option of producing "a paper printout of electronic records," but rather with a choice of whether to provide either the "original records," or to, instead, "copy governmental records requested to electronic media using standard or common file formats." (Quotations omitted.) The plaintiff contends that the "original records" in this case reside on a computer in the SAU, and, therefore, the defendants were required to produce the documents in electronic form — either by providing the original documents or by copying them to electronic media using standard or common file formats.

The plaintiff further argues that the second sentence of RSA 91-A:4, V "makes it clear that the authority to produce a hard-copy form of an electronically stored document arises <u>only</u> . . . if copying to electronic media <u>is not reasonably practicable</u>, or if the person or entity requesting access requests a different method." (Quotation omitted.) According to her, neither precondition is met because the trial court did not determine whether copying to electronic media is not reasonably practicable, and she eventually sought the records only in electronic format.

In response, the defendants argue that the plaintiff misreads RSA 91-A:4, V. The defendants contend that, because RSA 91-A:4, V uses the word

"may" as opposed to "shall," the statute simply gives public bodies the option of producing governmental records in electronic format.  See City of Rochester, 153 N.H. at 574 (explaining the difference between the words "may" and "shall").  For support, the defendants contrast this statute with statutes in other states concerning the public's access to governmental records, which, unlike RSA 91-A:4, V, explicitly require the disclosure of governmental records in the format requested.  See, e.g., Neb. Rev. Stat. § 84-712(3)(a) (2014) (providing that public records "may be obtained in any form designated by the requester in which the public record is maintained or produced, including, but not limited to, printouts, electronic data, discs, tapes, and photocopies"); Vt. Stat. Ann. tit. 1, § 316(i) (2015) ("If an agency maintains public records in an electronic format, nonexempt public records shall be available for copying in either the standard electronic format or the standard paper format, as designated by the party requesting the records.").

The defendants also assert that the reference to RSA 91-A:4, IV in RSA 91-A:4, V establishes that public bodies are required only to make governmental records available for inspection and copying, and that there is no affirmative duty to provide copies of records to requesting parties.  See RSA 91-A:4, IV ("Each public body or agency shall, upon request for any governmental record reasonably described, make available for inspection and copying any such governmental record within its files when such records are immediately available for such release.").  Thus, because the defendants made the paper documents available to the plaintiff for inspection and copying, they argue that they fulfilled their statutory obligations.  See Gallagher v. Town of Windham, 121 N.H. 156, 159 (1981) (concluding, under prior version of RSA 91-A:4, that there is no "absolute duty on towns or agencies to provide copies of public records to citizens" because the statute contemplates only "that public records be made available to individual members of the public for their inspection and reproduction").

After reviewing the parties' arguments, we find that both proffered interpretations of RSA 91-A:4, V are reasonable.  Accordingly, we conclude that the statute is ambiguous.  See Appeal of Old Dutch Mustard Co., 166 N.H. 501, 507 (2014).  "Under such circumstances, we turn to the legislative history to aid in our interpretation of the meaning of the statutory language."  Id.; see United States v. Howe, 167 N.H. 143, 148-49 (2014) (turning to legislative history because parties' proffered constructions of statute were both reasonable).  Here, however, the legislative history of RSA 91-A:4, V provides little guidance regarding the specific issue before us.  We, therefore, look to the purpose of the Right-to-Know Law, which is to "increas[e] public access to all public documents and governmental proceedings, and to provide the utmost information to the public about what its government is up to."  Prof'l Firefighters of N.H., 159 N.H. at 705 (quotation and citations omitted).

In light of the purpose of the Right-to-Know Law, and our broad construction of it, we conclude that the trial court erred when it determined that the plaintiff was not entitled to the requested documents in electronic format. Although the SAU notified the plaintiff that the documents that she requested were available for inspection, there is no evidence in the record that the paper documents made available constituted "original records" as contemplated by RSA 91-A:4, V. Moreover, there is no evidence that it was "not reasonably practicable" to copy the requested documents "to electronic media using standard or common file formats." RSA 91-A:4, V. Further, although the plaintiff initially requested the documents in either paper or electronic format, she later modified that request — including the request set forth in the complaint that she filed in the trial court — seeking the documents in only electronic format. We also note that the defendants have not argued that, in order to produce the requested documents in electronic format, they would be required to compile or assemble the documents into a new format. See RSA 91-A:4, VII ("Nothing in this chapter shall be construed to require a public body or agency to compile, cross-reference, or assemble information into a form in which it is not already kept or reported by that body or agency."); see also Hawkins v. N.H. Dep't of Health and Human Services, 147 N.H. 376, 379 (2001) (explaining that, under a prior version of the Right-to-Know Law, the public body was not required to create a new document in response to a request under RSA chapter 91-A). Nor have the defendants argued that the requested documents contained confidential information. See RSA 91-A:4, V (stating that confidential information shall not be provided). Under these circumstances, we cannot conclude that the defendants fulfilled their statutory obligations.

Accordingly, we conclude that the plaintiff was entitled to the requested documents in electronic format. The trial court's decision to the contrary was, therefore, in error.

We observe that requiring the defendants to produce the requested documents in electronic format advances the purpose of the Right-to-Know Law, which is to improve public access to governmental records and "provide the utmost information to the public about what [the] government is up to." Prof'l Firefighters of N.H., 159 N.H. at 705 (quotation omitted). Given that the "overwhelming majority of information" today "is created and stored electronically," U.S. ex rel. Carter v. Bridgepoint Educ., Inc., 305 F.R.D. 225, 237 n.23 (S.D. Cal. 2015) (quotation omitted), we agree with the plaintiff that the "[d]issemination of public, non-confidential information in commonly used [electronic] formats ensures the greatest degree of openness and the greatest amount of public access to the decisions made by the public officials." See Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 318 (S.D.N.Y. 2003) (explaining that, unlike paper evidence, electronic evidence "can be searched automatically, key words can be run . . . , and the production can be made in electronic form obviating the need for mass photocopying").

Furthermore, producing electronic documents is often more efficient and cost-effective than producing them in paper form.  See Mechling v. City of Monroe, 222 P.3d 808, 817 (Wash. Ct. App. 2009) ("Providing electronic records can be cheaper and easier for [a public body] than paper records." (quotation omitted)).  We recognized this reality over 40 years ago in Menge v. Manchester, 113 N.H. 533 (1973), in which we held that, under a prior version of the Right-to-Know Law, the plaintiff was entitled to the production of certain computerized tapes of field record cards from the defendants.  Menge, 113 N.H. at 535-38.  As we stated in Menge:

> The ease and minimal cost of the [computerized] tape reproduction as compared to the expense and labor involved in abstracting the information from the field cards are a common sense argument in favor of the former. . . .  Taking into account the practical realities of the situation, we believe it not only possible, but in accord with our law and what seems to be its basic philosophy, to so construe the statute as to permit plaintiff to have the reproduced tapes at his expense.

Id. at 538 (quotation omitted).  It is worth noting that when we decided Menge, personal computers, laptops, tablets, smartphones, and other forms of modern technology did not exist.  Cf. Bancorp Services v. Sun Life Assur. Co. of Canada, 687 F.3d 1266, 1277 (Fed. Cir. 2012) (observing that "[m]odern computer technology offers immense capabilities and a broad range of utilities").  In the intervening 43 years, advances in storing, copying, transferring, and analyzing computerized data have facilitated the public's access to "the utmost information . . . about what its government is up to," Prof'l Firefighters of N.H., 159 N.H. at 705 (quotation omitted).  See John B. v. Goetz, 879 F. Supp. 2d 787, 877 (M.D. Tenn. 2010) ("Electronically stored information, if kept in electronic form . . . can be very inexpensive to search through and sort using simple, readily available technologies . . . .  The cost of copying and transporting electronically stored information is virtually nil." (quotation and emphasis omitted)).

In sum, under all the circumstances, we conclude that the plaintiff is entitled to the requested documents in electronic format.  We note, however, that if the legislature disagrees with our statutory interpretation, it is "free to amend the statute as it sees fit."  Forster v. Town of Henniker, 167 N.H. 745, 753 (2015).  Finally, any issues raised in the notice of appeal that were not briefed are deemed waived.  See Waterfield v. Meredith Corp., 161 N.H. 707, 713 (2011).

Reversed.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.