422 So.2d 63 (1982)
Mark S. SEIGLE, Personally and As Director, Employee Relations, William T. McFatter, As Superintendent of Schools, and Benjamin F. Stephenson As Associate Superintendent for Personnel, of the Broward County School Board, Appellants,
v.
Dr. D. Marshall BARRY and Lawrence E. Jessup, Jr., Appellees.
No. 81-2046.
District Court of Appeal of Florida, Fourth District.
November 17, 1982.
As Corrected on Denial of Rehearing December 14, 1982.
*64 Edward J. Marko of Marko, Stephany & Lyons, Fort Lauderdale, for appellants.
Joseph H. Kaplan of Kaplan, Sicking, Hessen, Sugarman, Rosenthal & De Castro, P.A., and Joseph C. Segor, Miami, for appellees.
HERSEY, Judge.
This is an appeal from a non-final order in the nature of a mandatory injunction. We have jurisdiction under Rule 9.130(a)(3)(B), Florida Rules of Appellate Procedure. At the same time appellants seek review of an order denying their motion to dismiss the complaint. That order is not properly appealable until after final judgment. Habelow v. Travelers Ins. Co., 389 So.2d 218 (Fla. 5th DCA 1980); Peavy v. Parrish, 385 So.2d 1034 (Fla. 4th DCA 1980). See Rule 9.130, Florida Rules of Appellate Procedure.
This action was commenced to enforce certain rights under Florida's Public Records Act, Chapter 119, Florida Statutes (1981). Appellees, professional economists, are retained by the bargaining unit for several hundred employees of the Broward County School Board to prepare for and engage in collective bargaining negotiations with the School Board. Appellees sought access to certain public records maintained on a computer. The parties stipulated that, without admitting fault under Section 119.10, appellants would permit appellees access to the computer records including copies of computer tapes. None of the 800 programs *65 maintained by appellants could provide the information in the format desired by appellees. To remedy that problem, appellees offered to design and pay for a program that would produce the desired printout or to reimburse appellants for obtaining such a program and running it for appellees. Appellants refused, resulting in this litigation. The issues were presented to the court at a priority hearing provided for by Section 119.11(1). The circuit court ordered appellant to run a new program designed at appellees' expense which would access the computer data banks resulting in a printout of the public records in appellees' desired format. Furthermore, the order determined that appellants were in violation of the statute, despite the stipulation of the parties that fault (violation of the statute, Section 119.10) would be heard and decided at a subsequent hearing.
We reverse that portion of the order finding a violation of the statute because the parties stipulated that this issue would be tried later. We also determine that finding is not supported by substantial competent evidence.
The remaining question is whether there is a right under the Public Records Act to obtain information in a particular format. This is a question of first impression in this as well as any other jurisdiction. That being so, we begin with a short explanation of the computer terminology and principles involved.
A computer is an electronic device consisting of a finite number of on-off switches having the capability of storing vast amounts of information fed into it in a random fashion and is referred to in computer jargon as hardware. A computer program, known as software, is a means of retrieving that information in a specified format and at high speed. When a program is run, the computer produces the information in printed form termed a computer print-out.
Turning to the Public Records Act, we note it is sometimes referred to as a "right to know" law. The Act provides access to any information that is a matter of public record with certain specific and very limited exceptions. The statute defines public records as follows:
[A]ll documents, papers, letters, maps, books, tapes, photographs, films, sound recording or other material, regardless of physical form or characteristics, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency.
§ 119.011(1), Fla. Stat. (1979). There can be no doubt that information stored on a computer is as much a public record as a written page in a book or a tabulation in a file stored in a filing cabinet. Precedent is scant but supportive. See, e.g., Long v. U.S. Internal Revenue Service, 596 F.2d 362 (9th Cir.1979); Menge v. City of Manchester, 113 N.H. 533, 311 A.2d 116 (1973); Minnesota Medical Ass'n v. State, 274 N.W.2d 84 (Minn. 1978). It is also apparent that all of the information in the computer, not merely that which a particular program accesses, should be available for examination and copying in keeping with the public policy underlying the right to know statutes.
We now confront the more insidious question of whether the public may require information contained in public records to be made available for inspection and copying in a particular format. In the context of pre-computer public records we perceive the answer to this question to be in the negative. If the health department maintains a chronological list of dog-bite incidents with rabies implications the putative plaintiff, bitten by a suspect dog, may not require the health department to reorder that list and furnish a record of incidents segregated by geographical areas. Nothing in the statute, case law or public policy imposes such a burden upon our public officials. Nor may the plaintiff prevail by offering to pay the cost, thus eliminating the objection that the taxpayers money is being spent for individual gain. It would be ludicrous to require public officials to provide such a service when it can be as easily obtained by paying an expert in the private sector to reclassify the information. A contrary rule would not only impose onerous *66 and unnecessary burdens on public officials but would also place them in competition with private enterprise. Suffice it to say the answer seems clear and the policy unassailable.
When confronted with computerized records we are asked to apply a different rule. Appellees make a cogent and telling argument for the proposition that within reasonable bounds information in a computer should be accessible through a program designed for a particular output format at the expense of the applicant.
The information in a computer is analogous to information recorded in code. Where a public record is maintained in such a manner that it can only be interpreted by the use of a code then the code book must be furnished to the applicant. State ex rel. Davidson v. Couch, 117 Fla. 609, 158 So. 103 (1934). In Kryston v. Board of Education, 430 N.Y.S.2d 688, 77 A.D. 896 (N.Y. App. Div. 1980), test scores were a matter of public record but the identity of the persons tested were confidential. There, the agency was required to reorder or scramble the test scores making it impossible to correlate scores with the names of persons tested before furnishing the recompiled list to the applicant. At least one court has previously approved an agency agreement to provide data in a certain form when the applicant supplied the program. Minnesota Medical Ass'n v. State, 274 N.W.2d 84 (Minn. 1978).
Appellees, relying on these precedents and other authority, argue that refusal to allow an applicant to access the computer with a specially designed program will have an "adverse effect on the people's right to know about the inside activities of their government." They quote a Massachusetts case in support of that argument as follows:
The manner in which data are collected and stored in a carefully programmed computer has major implications for the manner in which they can later be used. Control over the collection, processing, and dissemination of data is thus at least indirect control over the information processed and the activities of personnel engaged in its collection and use.
Opinion of the Justices, 365 Mass. 639, 309 N.E.2d 476, 481 (1974).
While we do not disagree with the underlying policy espoused by appellees and alluded to by the Massachusetts court, we recognize that there are competing interests that deserve consideration. The adversaries are not always David and Goliath or the embattled taxpayer against the omnipotent bureaucracy. There will be those with an ax to grind, a personal grudge or some other single interest to advance, making their demands for access to public records. In such cases access remains mandated by law as well as by sound public policy. An absolute rule permitting access to computerized records by a specially designed program could well result in a tremendous expenditure of time and effort for the mere sake of translating information readily and inexpensively available in one format into another format more suitable to the applicant's particular purposes. Simply requiring that the applicant pay the direct costs involved in the process does not recoup the wasted time or complete the other tasks that could have been accomplished but for the special project. It is not the intent of the law to put public officials in the business of compiling charts and preparing documentary evidence. The intent is rather to make available to the public information which is a matter of public record, in some meaningful form, not necessarily that which the applicant prefers.
We, therefore, adopt the rule that access to computerized records shall be given through the use of programs currently in use by the public official responsible for maintaining the public records. Access by the use of a specially designed program prepared by or at the expense of the applicant may obviously be permitted in the discretion of the public official and pursuant to Section 119.07(1). In the event of refusal of the public official to permit access in this manner, the circuit court may permit access pursuant to the same statutory restraints where:
*67 (1) available programs do not access all of the public records stored in the computer's data banks; or
(2) the information in the computer accessible by the use of available programs would include exempt information necessitating a special program to delete such exempt items; or
(3) for any reason the form in which the information is proffered does not fairly and meaningfully represent the records; or
(4) the court determines other exceptional circumstances exist warranting this special remedy.
We therefore reverse that portion of the order finding appellants at fault as being premature and not supported by the record. We also reverse the mandatory injunction and remand for rehearing of the evidence on that issue and the entry of an order, if appropriate, based upon findings consonant with the factors outlined in our opinion. No other issues are ripe for decision at this time.
REVERSED AND REMANDED.
DOWNEY and DELL, JJ., concur.