Mr. G. Kenneth Gilleland General Counsel Florida Game and Fresh Water Fish Commission Farris Bryant Building 620 South Meridian Street Tallahassee, Florida 32301
Dear Mr. Gilleland:
This is in response to your request for an opinion on substantially the following questions:
 1. WHAT IS THE STATUTORY DUTY OF THE GAME AND FRESH WATER FISH COMMISSION UNDER CH. 119, F.S., AS AMENDED BY CH. 84-298, LAWS OF FLORIDA, WITH RESPECT TO REQUESTS FOR LISTS CONTAINING NAMES AND ADDRESSES OF PRIVATE CITIZENS:
 a. WHERE SUCH NAMES AND ADDRESSES ARE COMPILED FOR PURPOSES OF A MAILING LIST OF SUBSCRIBERS TO THE COMMISSION'S MAGAZINE, AND
 b. WHERE SUCH NAMES AND ADDRESSES ARE COMPILED FOR PURPOSES OF COMMISSION LICENSING OR PERMITTING?
 2. WHAT CHARGES MAY BE IMPOSED FOR COMPLYING WITH REQUESTS FOR SUCH LISTS?
 3. DOES THE FEDERAL PRIVACY ACT OF 1974 REQUIRE THAT THE NAME AND ADDRESS OF A PRIVATE CITIZEN BE EXCLUDED AT THE REQUEST OF THE AFFECTED PRIVATE CITIZEN FROM ANY LIST OF NAMES AND ADDRESSES SUPPLIED PURSUANT TO CH. 119, F.S.?
According to your inquiry, the Game and Fresh Water Fish Commission publishes a subscription magazine and has computerized the names and addresses of subscribers. The commission has also computerized the issuance of certain hunting quota permits. You further state that, pursuant to "frequent requests by both private and commercial interests for mailing lists of subscribers of the magazine or lists of permittees," the commission has found it "cheaper and more expedient to supply previously generated computer tapes for such requests when they are available." Now, however, "[a]n individual has demanded that his name be removed from such lists under the Federal Privacy Act of 1974," and you accordingly ask about the commission's duties and obligations with respect to this federal law and the Florida Public Records Law, Ch. 119, F.S., as amended by Ch. 84-298, Laws of Florida.
QUESTION ONE
Section 119.01(1), F.S., provides that "[i]t is the policy of this state that all state, county, and municipal records shall at all times be open for a personal inspection by any person." Section119.011(1), F.S., defines "public records" for purposes of the Florida Public Records Law as
 all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings or other material, regardless of physical form or characteristics, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency. (e.s.)
Section 119.011(2), F.S., defines "agency" to mean "any state . . . commission . . . created or established by law. . . ." See also, Rule 39-2.07, F.A.C. (subject to Ch. 119, F.S., commission records available to public inspection). Information stored on a computer is as much a public record as the written page in a book or tabulation on a file stored in a filing cabinet; moreover, all the information in the computer, not merely that which a particular program accesses, should be available for examination and copying in keeping with the public policy underlying Ch. 119, the Public Records Law. Seigle v. Barry, 422 So.2d 63, 65 (4 D.C.A. Fla., 1982), pet. for rev. den., 431 So.2d 988 (Fla. 1983). It is therefore apparent that computer tapes from which the names and addresses of subscribers to the Game and Fresh Water Fish Commission's magazine or from which the names and addresses of commission permittees or licensees may be obtained are "public records" within the meaning of the Florida Public Records Law and, in the absence of a statute exempting such records from disclosure or providing for their confidentiality, must be available for inspection and copying. See, s 119.07(1)(a), F.S., as amended by Ch. 84-298, Laws of Florida, which provides in pertinent part as follows:
 Every person who has custody of a public record shall permit the record to be inspected and examined by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public record or his designee. The custodian shall furnish a copy or a certified copy of the record upon payment of the fee prescribed by law or, if a fee is not prescribed by law, upon payment of the actual cost of duplication of the record. (e.s.)
With respect to the furnishing of "previously generated computer tapes" by the commission in response to requests pursuant to Ch.119, F.S., I would observe that such tapes, as public records themselves, are subject to disposal according to the terms of the statute. See, s 119.041, F.S., providing that "[e]very public official shall systematically dispose of records no longer needed subject to the consent of the Division of Archives, History and Records Management of the Department of State in accordance with chapter 267." Where a statute specifies the manner of doing a thing, it impliedly prohibits doing such a thing in any other manner. Alsop v. Pierce, 19 So.2d 799 (Fla. 1944); White v. Crandon, 156 So. 303 (Fla. 1934).
The court in Seigle v. Barry, supra, adopted the rule that access to computerized public records shall be given through the use of programs currently in use by the public official responsible for maintaining the public records; access by use of a specially designed program prepared by or at the expense of the person requesting the information may be permitted in the discretion of the custodian of the records. If the custodian of public records refuses to permit access in this manner, the circuit court may permit access subject to the same statutory restraints where: (1) the available programs do not access all of the public records stored in the computer's data banks, (2) the information in the computer accessible by use of the available programs would include exempt information which would necessitate a special program to delete such exempt items, (3) the form in which the information is proferred does not fairly and meaningfully represent the records, or (4) the court determines other exceptional circumstances exist warranting this special remedy.
In sum, the Game and Fresh Water Fish Commission has a mandatory duty under Ch. 119, F.S., to permit access to public records, including computer tapes from which the names and addresses of subscribers to the commission's magazine or the names and addresses of commission licensees or permittees may be obtained, and to furnish copies of such records upon request. The choice of methods by which furnishing access to such records is most effectively accomplished in keeping with the legislative mandate of Ch. 119 must be within the sound discretion of the custodian who is responsible for insuring that the commands of Ch. 119 are followed. Finally, I am not aware of any state statute exempting computer tapes from which the names and addresses of subscribers to the commission's magazine or the names and addresses of commission licensees or permittees may be obtained from disclosure or copying pursuant to Ch. 119, or which prohibits the use of such mailing lists for commercial purposes once obtained. Compare, s 98.211, F.S., prohibiting commercial use of voter registration lists.
Therefore, unless and until legislatively or judicially determined otherwise, I am of the opinion that the Game and Fresh Water Fish Commission, in the absence of a statute providing for the confidentiality of such records or exempting such information from disclosure, has a mandatory duty to permit the inspection of public records, including computer tapes from which the names and addresses of subscribers to the commission's magazine or the names and addresses of commission licensees or permittees may be obtained, and to furnish copies of such records upon request.
QUESTION TWO
It has long been the opinion of this office that, in the absence of a statute to the contrary, public information must be open to the public without charge. See, e.g., AGO's 84-81, 76-34 and 75-50. And see, AGO 76-34, which dealt specifically with the issue of access to computerized records and concluded that the public must have free access to a computer terminal for the mere inspection and examination of public records, absent specific statutory authority for a charge or fee. The provision of access to public records is a statutory duty imposed by the Legislature upon all records custodians and should not generally be considered a revenue-generating operation, and the mandatory inspection provisions of Ch. 119, F.S., were intended to operate regardless of the physical form or characteristics of particular records. Attorney General Opinion 84-3. See, s 119.011(1), F.S., supra, defining "public records" for purposes of Ch. 119.
With respect to permitting inspection of public records or furnishing copies thereof, s 119.07(1)(a), F.S., as amended by s 5 of Ch. 84-298, Laws of Florida, provides that, in the absence of a fee prescribed by law, copies shall be furnished "upon payment of the actual cost of duplication of the record." The statute goes on to define "actual cost of duplication" as "the cost of the material and supplies used to duplicate the record, but it does not include labor costs or overhead costs associated with such duplication." Cf., Inf. Op. to Janet Reno, June 28, 1978, concluding that the actual cost of duplication does not include such incidental expenses as utilities, personnel and other office expenses. Section 119.07(1)(b), F.S., as amended by s 5 of Ch. 84-298, supra, provides a limited exception by stating that
 [i]f the nature or volume of public records requested to be inspected, examined, or copied pursuant to this subsection is such as to require extensive clerical or supervisory assistance by personnel of the agency involved, the agency may charge, in addition to the actual cost of duplication, a special service charge, which shall be reasonable and shall be based on the labor costs actually incurred by the agency or attributable to the agency for the clerical and supervisory assistance required of such personnel providing the service. (e.s.)
I am not aware of any fee prescribed by law for the furnishing of copies of public records of the Game and Fresh Water Fish Commission, nor has any such provision been brought to the attention of this office. In the absence of such a provision, the commission may only impose a charge for the "actual cost of duplication" of public records, including computer tapes from which the names and addresses of subscribers to the commission's magazine or the names and addresses of commission licensees or permittees may be obtained, and may impose a reasonable special service charge only if "the nature or volume of public records requested to be inspected, examined, or copied . . . is such as to require extensive clerical or supervisory assistance," which charge "shall be based on the labor costs actually incurred" in providing such assistance. However, the commission is without statutory authority to impose any other charge or fee or to render the furnishing of such public records or copies thereof a revenue-generating operation.
Therefore, unless and until legislatively or judicially determined otherwise, I am of the opinion that the Game and Fresh Water Fish Commission may impose a charge for the actual cost of duplication of public records, including computer tapes from which the names and addresses of subscribers to the commission's magazine or the names and addresses of commission licensees or permittees may be obtained, and may impose a reasonable special service charge only if the nature or volume of records requested to be inspected, examined, or copied is such as to require extensive clerical or supervisory assistance, but that, in the absence of any other statutory provision authorizing a fee or charge for furnishing access to public records, the commission is without authority to impose any such fee or charge or to render the furnishing of such public records or copies thereof a revenue-generating operation.
QUESTION THREE
As noted above, you state that an individual has demanded that his name be removed from such lists of the Game and Fresh Water Fish Commission as may be inspected by or furnished to private and commercial interests, pursuant to the Federal Privacy Act of 1974. You suggest "an apparent conflict between this Act and chapter 119, Florida Statutes." If a federal statute requires that particular records be closed and the state is clearly subject to the provisions of the federal statute, then pursuant to the Supremacy Clause of the United States Constitution, s 2, Art. VI, U.S. Const., the state is required to keep such records and the information contained therein confidential. Records which would otherwise be public under state law would thus not be available for public inspection only when there is an absolute conflict between state and federal record disclosural provisions. However, I find nothing in the Federal Privacy Act of 1974, Pub.L. 93-579, as codified at 5 U.S.C. § 552a, which conflicts in any way with the statutory duties of the commission pursuant to Ch. 119, F.S., the Florida Public Records Law. Moreover, no provision of Ch. 119, F.S., permits an individual to remove information from public records or allows an agency to do so at the request of such individual. See, AGO 71-394, concluding that communications marked "confidential" which are otherwise subject to the mandate of the Florida Public Records Law must be open to public inspection unless exempted from disclosure by the Legislature.
Public Law 93-579, s 3, December 31, 1974, 88 Stat. 1896, as amended by Pub.L. 94-183, s 2(2), December 31, 1975,89 Stat. 1057, the Federal Privacy Act of 1974, and codified at5 U.S.C. § 552a, provides in pertinent part:
 (n) Mailing lists. — An individual's name and address may not be sold or rented by an agency unless such action is specifically authorized by law. This provision shall not be construed to require the withholding of names and addresses otherwise permitted to be made public.
However, 5 U.S.C. § 552a(a)(1) provides that for purposes of the Federal Privacy Act, the term "agency" means agency as defined by5 U.S.C. § 552(e). That section defines the term "agency" as defined in 5 U.S.C. § 551(1) to include certain agencies of the executive branch of the Federal Government. Moreover,5 U.S.C. § 551(1) expressly defines "agency" as "each authority of the Government of the United States," (e.s.) with certain exceptions not pertinent to this inquiry. See also, 5 U.S.C. § 552a(m), which states that provisions of the Federal Privacy Act of 1974 shall apply "[w]hen an agency provides by a contract for the operation by or on behalf of the agency of a system of records to accomplish an agency function. . . ." As it appears from these sections defining "agency" for purposes of the Federal Privacy Act of 1974 that the act applies only to agencies of the Federal Government (and entities contracting with agencies of the Federal Government to operate a system of records "by or on behalf of" such agencies), I am unable to conclude that the Federal Privacy Act applies to the Florida Game and Fresh Water Fish Commission so as to require the exclusion of the name and address of a private citizen from such lists of subscribers to the commission's magazine or such lists of commission licensees or permittees as may be produced for inspection or copying pursuant to Ch. 119, F.S., the Florida Public Records Law. Cf., AGO 80-31, concluding that information about reimbursements to Medicaid providers was subject to public inspection and examination under the Florida Public Records Law in the absence of an express provision of federal law making such information confidential. Finally, it is noted that 5 U.S.C. § 552a(n) operates only to prohibit the unauthorized sale or rental of an individual's name and address and does not require the withholding of names and addresses otherwise permitted to be made public. As I expressly concluded in response to Question Two above, the Game and Fresh Water Fish Commission has no statutory authority to use its statutory duty to furnish public records for inspection or copying as a revenue-generating operation. Rather, such public records of the commission as may contain the names and addresses of subscribers to the commission's magazine or the names and addresses of commission licensees or permittees or from which such names and addresses may be obtained are required by Florida law to be furnished for inspection or copying upon the imposition of such reasonable charges as may reimburse the commission for the actual cost of duplication or, in certain circumstances, for the actual cost incurred for extensive clerical and supervisory assistance if warranted by the nature or volume of such records.
I would note that the Federal Privacy Act as proposed contained a paragraph that, as summarized in the legislative history, would have required the removal of an individual's name and address from a mailing list used by any person, business or organization engaged in interstate commerce upon the written request of such individual. See, Senate Report No. 93-1183, reprinted at U.S. Code Cong. Ad. News, 93rd Congress, Second Session, Vol. 4, at p. 6992. However, my research on the Federal Privacy Act of 1974 fails to reveal that such paragraph was ever enacted into law. See, U.S. Code Cong. Ad. News, 93rd Congress, Second Session, Vol. 2, at pp. 2177-2194 (setting forth the text of Pub.L. 93-579,88 Stat. 1896, the Federal Privacy Act of 1974). Moreover, the Senate Report referred to above states in part that such paragraph "does not attempt to regulate the maintenance of files and personal records of State and local governments. . . ."
Therefore, unless and until legislatively or judicially determined otherwise, I am of the opinion that the Federal Privacy Act of 1974 does not require the exclusion of the name and address of a private citizen at the request of the affected private citizen from such public records of the Game and Fresh Water Fish Commission as may be furnished pursuant to Ch. 119, F.S., since the commission is not an "agency" within the meaning of that act nor is the commission authorized to sell or rent such names and addresses as may be contained in such public records.
In summary, then, and unless and until legislatively or judicially determined otherwise, I am of the opinion that:
 1. The Game and Fresh Water Fish Commission, in the absence of a statute providing for the confidentiality of such records or exempting such information from disclosure, has a mandatory duty to permit the inspection of public records, including computer tapes from which the names and addresses of subscribers to the commission's magazine or the names and addresses of commission licensees or permittees may be obtained, and to furnish copies of such records upon request.
 2. The Game and Fresh Water Fish Commission may impose a charge for the actual cost of duplication of public records, including computer tapes from which the names and addresses of subscribers to the commission's magazine or the names and addresses of commission licensees or permittees may be obtained, and may impose a reasonable special service charge only if the nature or volume of records requested to be inspected, examined, or copied is such as to require extensive clerical or supervisory assistance, but that, in the absence of any other statutory provision authorizing a fee or charge for furnishing access to public records, the commission is without authority to impose any such fee or charge or to render the furnishing of such public records or copies thereof a revenue-generating operation.
 3. The Federal Privacy Act of 1974 does not require the exclusion of the name and address of a private citizen at the request of the affected private citizen from such public records of the Game and Fresh Water Fish Commission as may be furnished pursuant to Ch. 119, F.S., since the commission is not an "agency" within the meaning of that act nor is the commission authorized to sell or rent such names and addresses as may be contained in such public records.
Sincerely,
Jim Smith Attorney General
Prepared by:
Kent L. Weissinger Assistant Attorney General