508 So.2d 395 (1987)
Warren A. ELLSWORTH and Edith Ellsworth, Appellants,
v.
INSURANCE COMPANY OF NORTH AMERICA, Appellee.
No. BL-463.
District Court of Appeal of Florida, First District.
April 29, 1987.
Rehearing Denied July 1, 1987.
*396 Walter A. Steigleman and W. Dennis Brannon, of Dewrell, Blue & Brannon, Fort Walton Beach, for appellants.
S. William Fuller, Jr. and P. Scott Mitchell, of Fuller & Johnson, Tallahassee, for appellee.
JOANOS, Judge.
Appellants Warren A. Ellsworth and Edith Ellsworth (the Ellsworths) seek review of a trial court ruling which held their business insurance policy with Insurance Company of North America (INA) did not provide uninsured motorist coverage. The questions presented are (1) whether this court should take judicial notice of a staff summary and analysis of the 1984 bill amending the uninsured motorist statute, (2) whether the trial court erred in finding appellants had no uninsured motorist coverage, and (3) whether the trial court erred in failing to admit the staff summary and analysis into evidence. We reverse.
In 1979, the Ellsworths purchased Nina Michel, Inc., a small dress shop. At the time of purchase, the Ellsworths maintained the comprehensive businessowners insurance policy with Peninsula Fire Insurance Company which had been carried by the former owner. Initially, the business was operated solely by Mrs. Ellsworth. Mrs. Ellsworth owned a 1978 Lincoln, titled in her name, which she used in the business to transport clothing to style shows, to make buying trips, and for other general business transportation purposes. The Lincoln was insured by Aetna. According to the Ellsworths, their Aetna agent discussed the specifics of uninsured motorist (UM) coverage with them. For reasons of economy, the Ellsworths rejected UM coverage on the Lincoln. In 1980, after suffering health problems which necessitated his leaving his position with the county, Mr. Ellsworth joined his wife in operation of the business.
The businessowners insurance policy with Peninsula which the Ellsworths had assumed when they purchased the business, provided, among other things, automobile liability coverage, termed excess coverage in the policy. In March 1982 Peninsula *397 notified the Ellsworths of a premium increase and the threat of nonrenewal unless they made improvements in the shop's security system. The Ellsworths consulted another agent, David Stannard, who advised that with a slight increase over their existing premiums, an INA policy would provide broader coverage than the existing policy with no change required in their security system. Subsequently, Stannard wrote up the INA policy for the Ellsworths, with Nina Michel, Inc. as the sole named insured.
The record reflects that the Ellsworths' discussions with Stannard concerning coverage under the INA policy were directed, for the most part, to obtaining insurance coverage similar to that provided by the former policy with Peninsula. Mrs. Ellsworth testified that when Stannard delivered the policy, he explained some of the matters contained therein; and she looked through it to assure herself that the coverage under the policy was in compliance with the requirements of the plaza in which Nina Michel, Inc. is located, and that it provided protection for the use of her car on company business. In light of their extensive discussions with their Aetna agent concerning automobile policies and UM coverage, the Ellsworths were aware that UM coverage is provided unless expressly rejected. The Ellsworths did not, however, discuss UM coverage with Stannard.
On August 13, 1982, while driving the Lincoln on a business trip, the Ellsworths were involved in a head-on collision with a 20-ton truck. It is undisputed that the accident was caused by the driver of the truck, and that he was an underinsured motorist. The Ellsworths suffered severe personal injuries. Although they received $30,000 from the truck driver's liability carrier, INA does not dispute the fact that the other driver was underinsured for the injuries suffered by the Ellsworths.
After INA denied the Ellsworths' claim for UM benefits, they filed a two-count complaint seeking UM coverage by operation of Florida law and an award of damages under that coverage for their personal injuries. The trial court had the benefit of deposition and live testimony, including extensive testimony from an expert witness called on behalf of INA. On the final day of the trial court proceedings, INA filed a memorandum of law in which it asserted, for the first time, that the UM provisions are inapplicable because the comprehensive general liability policy at issue did not mention any specifically insured or identified motor vehicle. In support of its contention, INA argued the 1984 amendment to section 627.727, Florida Statutes, served to clarify the 1981 statute and made clear the legislative intent that the 1981 statute should apply only to classic automobile insurance policies. To demonstrate that under the 1981 version of section 627.727 UM coverage was available, the Ellsworths attempted to introduce the legislative Staff Summary and Analysis prepared during the 1984 legislative session, in connection with House Bill 319. INA did not contest the authenticity of the Staff Summary and Analysis, but objected to its admission on hearsay grounds. The trial court sustained the objection, and in the final judgment concluded that, as a matter of law, UM coverage was not provided by the businessowners insurance policy.
Filed contemporaneously with their initial briefs in this cause, the Ellsworths filed a motion requesting this court to take judicial notice of the excluded Staff Summary and Analysis. Matters which must be judicially noticed are set forth in section 90.201 of the Evidence Code, and matters which may be judicially noticed appear in section 90.202. Section 90.203, Florida Statutes (1985), provides that a court shall take judicial notice of any matter in section 90.202 
when a party requests it and:
(1) Gives each adverse party timely written notice of the request, proof of which is filed with the court, to enable the adverse party to meet the request.
(2) Furnishes the court with sufficient information to enable it to take judicial notice of the matter.
In Hillsborough County Board of County Commissioners v. Public Employees *398 Relations Commission, 424 So.2d 132 (Fla. 1st DCA 1982), this court held that the Florida Evidence Code does not apply to appellate proceedings, because the general law of evidence did not apply to appellate proceedings prior to the effective date of the Code. See s. 90.103(1), Fla. Stat. (1985).
We recognize that in appropriate circumstances an appellate court may take judicial notice of its own records, and that in certain circumstances such judicial notice is mandatory. See Hillsborough County, 424 So.2d at 134, and cases cited therein. Nevertheless, an appeal "is a proceeding to review a judgment or order of a lower tribunal based upon the record made before the lower tribunal." Id. Although Florida appellate courts may consider legislative staff summaries in construing statutes, judicial notice clearly is not a prerequisite to that consideration. Such reports may be consulted in the course of the court's independent research, through advocacy, or through introduction into the record at the trial level by judicial notice. Department of Health & Rehabilitative Services v. Shatto, 487 So.2d 1152 (Fla. 1st DCA 1986); Jacksonville Electric Authority v. Department of Revenue, 486 So.2d 1350 (Fla. 1st DCA), review denied, 492 So.2d 1331 (Fla. 1986). Because we conclude that appellate judicial notice of a legislative Staff Summary and Analysis would be incompatible with traditional standards of appellate practice, we deny appellants' motion to take judicial notice.
In a similar vein, we find the trial court did not err in excluding from evidence the 1984 legislative Staff Summary and Analysis. This analysis, which purports to explain the effect of the 1984 amendments, is not determinative of legislative intent with respect to the 1981 version of section 627.727. Accordingly, we affirm the trial court's ruling in this regard.
However, our examination of the policy which is the subject of this appeal demonstrates the trial court erred in determining the Ellsworths had no UM coverage under their comprehensive businessowners policy. The businessowners' policy at issue in this case excludes from business liability coverage bodily injury or property damage "arising out of the ownership, ... operation, use, ... of (1) any automobile, ... which you own or operate ..." Then, under "Additional Liability Coverage," an exception to this exclusion is carved out for "(1) the use in your business of a non-owned private passenger automobile by anyone (other than [you, yourself])."
In the policy glossary, "non-owned automobiles" 
means automobile not owned in whole or part by the named insured. In addition, such automobile may not be registered in the name of or hired or leased by the named insured. Finally, such automobile may not be loaned to the named insured. In this definition, "named insured" includes any partner, if the named insured is a partnership.
The policy defines "named insured" as 
the person, organization or other entity named on page one of the policy. Throughout the policy, named insured is also referred to as "you" and your.

And, in turn, "you" and "your" means the named insured, and unless "specifically limited to the named insured, those described below are included."
.....
(c) If the named insured is other than an individual, partnership or joint venture, the executive officers or directors of the organization so named are included while acting within the scope of their duties.
Further, under subsection (g) appears the following:
(g) Under the Additional Liability Coverage for non-owned automobiles, only (a), (b), and (c) above are included in "you" and "your."
None of the following are included:
.....
(2) Any partner or executive officer with respect to an automobile owned by *399 the partner or officer or by a member of his (her) household.
.....
The record reflects that the named insured on the policy is Nina Michel, Inc. The Ellsworths are executive officers or directors of the corporation. The accident involved herein occurred while the Ellsworths were driving Mrs. Ellsworth's non-owned car on corporate business. Thus, for purposes of the exception to the automobile exclusion, the question becomes whether the Ellsworths were named insureds within the subsection (c) definition of "you" and "your," but were removed from that definition by subsection (g)(2). Under subsection (g)(2), an executive officer with respect to an automobile owned by the executive officer is not included as "you" and "your," meaning named insured. Thus, under subsection (g), the Ellsworths would fall within the exception to the automobile exclusion. If, on the other hand, subsection (c) controls and the Ellsworths are included within the purview of named insured, then the policy provided no coverage for the business use of their private auto.
Dr. Goodfelow, INA's expert witness, interpreted the policy to mean that the Ellsworths had no automobile liability coverage under the policy insofar as their use of Mrs. Ellsworth's private car for business use was concerned. On the other hand, in describing the INA policy to the Ellsworths, David Stannard assured them the INA coverage was the same albeit broader than the coverage provided by their former policy. The former policy provided limited liability coverage for use of Mrs. Ellsworth's car in connection with the business. Furthermore, a senior underwriter for INA testified that in her opinion the policy provided coverage for the business use of the Ellsworths' privately owned car.
We begin our analysis with reference to the purpose of uninsured motorist coverage, that is, "to protect persons who are injured or damaged by other motorists who in turn are not insured and cannot make whole the injured party." Brown v. Progressive Mutual Insurance Company, 249 So.2d 429, 430 (Fla. 1971). Accord Allstate Insurance Company v. Boynton, 486 So.2d 552, 557 (Fla. 1986), where the supreme court explained:
The uninsured motorist statute provides that coverage is "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury." s. 627.727(1). The UM coverage, in purpose and effect, provides a limited form of insurance coverage up to the applicable policy limits for the uninsured motorist. The carrier effectually stands in the uninsured motorist's shoes and can raise and assert any defense that the uninsured motorist could urge. In other words, UM coverage is a limited form of third party coverage inuring to the limited benefit of the tortfeasor to provide a source of financial responsibility if the policyholder is entitled under the law to recover from the tortfeasor. It is not first party coverage even though the policyholder pays for it. In first party coverage, such as medical, collision or theft insurance, fault is not an element. The insurance carrier pays even though the policy holder is totally at fault. With UM coverage, the carrier pays only if the tortfeasor would have to pay, if the claim were made directly against the tortfeasor.
Next, we turn to the well settled principle that ambiguity in the language of the policy will be construed liberally in favor of the insured and strictly against the insurer. Hartnett v. Southern Insurance Company, 181 So.2d 524, 528 (Fla. 1965);[1]Morrison Assurance Company v. *400 R.N. Pyle Mechanical Contractor, Inc., 498 So.2d 487 (Fla. 1st DCA 1986); Traveler's Insurance Company v. C.J. Gayfer's & Co., Inc., 366 So.2d 1199 (Fla. 1st DCA 1979). "An ambiguity arises when more than one interpretation `may fairly be given' to a policy provision." Traveler's Insurance Co., 366 So.2d at 1201-1202.
In this case, the policy expressly provides "Additional Liability Coverage" for "the use in [the named insured's] business of a non-owned private passenger automobile by anyone (other than [the named insured])." Thus, by its terms the policy provides liability coverage when a private passenger automobile, which is not owned by the named insured, is used in the business. We find ambiguity in the policy language which purports to define "named insured" for purposes of the policy exception to the automobile liability exclusion. We note also that both INA's expert witness and one of its senior underwriters agreed that although they do not favor an interpretation of the policy language which excludes the Ellsworths from the definition of "named insured," such a construction is in fact reasonable. Accordingly, in keeping with the rule that ambiguous policy provisions should be construed strictly against the insurer-drafter, we conclude the Ellsworths as executive officers of Nina Michel, Inc. are not included within the "you" and "your" definition of named insured.
Since our interpretation of the policy language affords automobile liability coverage to the Ellsworths for their business use of Mrs. Ellsworth's privately owned automobile, we turn now to the provisions of section 627.727, Florida Statutes (1981).[2] The statute expressly requires that any insurer issuing a policy of insurance in the state of Florida which affords "automobile liability insurance to a Florida insured must provide uninsured-underinsured motorist coverage with limits equal to the liability limits purchased by the insured," unless rejected by the insured or the insured selects coverage with lower limits. Cohen v. American Home Assurance Company, 367 So.2d 677, 681 (Fla. 3d DCA), cert. denied, 378 So.2d 342 (Fla. 1979). These provisions implement the public policy underlying the UM statute, that is, "to provide uniform and specific insurance benefits to members of the public to cover damages for bodily injuries caused by the negligence of uninsured/underinsured motorists." Automobile Insurance Company of Hartford, Connecticut v. Beem, 469 So.2d 138, 139 (Fla. 3d DCA 1985), citing Mullis v. State Farm Mutual Automobile Insurance Company, 252 So.2d 229 (Fla. 1971).
The factors which determine UM coverage are (1) whether the plaintiff has been injured by an uninsured motor vehicle and (2) whether he is "legally entitled to recover" from the operator of the uninsured vehicle. Allstate Insurance Company v. Boynton, 486 So.2d 552 (Fla. 1986); Jernigan v. Progressive American Insurance Company, 501 So.2d 748, 749 (Fla. 5th DCA 1987). Persons insured under a policy of basic automobile liability coverage must be provided with UM coverage. Auto-Owners Insurance Company v. Bennett, 466 So.2d 242, 243 (Fla. 2d DCA 1984).
Furthermore, the 1981 version of the statute which is applicable herein did not limit the provision of UM coverage to "specifically insured or identified" motor *401 vehicles. This language was added by the 1984 amendments. In addition, the amendments expressly provide, at subsection (2), that "[t]his act shall take effect October 1, 1984, and shall apply to new and renewal policies with an effective date on or after such date." Ch. 84-41, s. 1, Laws of Fla. INA argues the limiting language of the 1984 amendment served to clarify legislative intent and should be applied retrospectively. We are not persuaded, and agree with the Third District Court of Appeal, which concluded the clear expression of the effective date and application of the amended statute demonstrated "an expressed legislative intent that application of this law be prospective." Automobile Insurance Company of Hartford v. Beem, 469 So.2d 138, 141 (Fla. 3d DCA 1985).[3]
In summary, we conclude the policy language is ambiguous, and interpretation of the ambiguities in favor of the insured provides basic liability coverage for the Ellsworths for the business use of their privately owned automobile. Since the Ellsworths are legally entitled to recover from the driver of the motor vehicle which caused their injuries, the insurer is required, pursuant to section 627.727, Florida Statutes (1981), to provide UM benefits. See Boynton v. Allstate Insurance Company, supra; Jernigan v. Progressive American Insurance Company, supra.
Accordingly, the final judgment which dismissed the Ellsworths' complaint based upon the trial court's finding that the Ellsworths had no UM coverage pursuant to their policy with INA, is reversed and remanded for proceedings consistent with this opinion.
SMITH, J., concurs.
BARFIELD, J., concurs with written opinion.
BARFIELD, Judge, concurring:
I concur in the result only.
NOTES
[1] In Hartnett, the supreme court said:

There is no reason why such policies cannot be phrased so that the average person can clearly understand what he is buying. And so long as these contracts are drawn in such a manner that it requires the proverbial Philadelphia lawyer to comprehend the terms embodied in it, the courts should and will construe them liberally in favor of the insured and strictly against the insurer to protect the buying public who rely upon the companies and agencies in such transactions. 181 So.2d at 528.
[2] Section 627.727, Fla. Stat. (1981), provides in relevant part:

(1) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required under this section shall not be applicable when, or to the extent that, any insured named in the policy shall reject the coverage.
[3] Our decision in this case is not predicated on the 1984 Staff Summary and Analysis, which purports to explicate the effect of the amendments on the statute as formerly drafted. We note however, that this particular type of extrinsic aid to statutory interpretation is accorded significant respect by Florida courts as well as courts nationally. See Rhodes and Seereiter, The Search for Intent: Aids to Statutory Construction in Florida  An Update, 13 Fla.St.U.L. Rev. 485 (1985).