The Honorable Darryl Taylor Superintendent Calhoun County School Board 425 East Central Avenue, G-20 Blountstown, Florida 32424
Dear Mr. Taylor:
On behalf of the Calhoun County School Board, you ask for my opinion on substantially the following question:
Does the school board have the authority to create an ordinance as that term is used in s. 236.24(2)(a), F.S., regarding the investment of surplus school funds?
In sum:
A district school board has the authority to adopt an "ordinance," that is, take official action of a general and permanent nature, pursuant to s. 236.24(2)(a), F.S., regarding the investment of surplus school funds.
Section 236.24(2)(a), F.S., provides that each school board "[u]nless otherwise authorized by law or ordinance," shall, by resolution adopted from time to time, invest and reinvest any surplus public funds in its possession and control in the investments specified therein.[1] Prior to its amendment in 1988, s. 236.24(2), F.S. 1987, required a school board to invest surplus school funds in time deposits in savings accounts in Florida banks or savings and loan associations if such institutions'pay rates were at least as high as the current United States Treasury bill rates. If such rates did not match United States Treasury rates, the school board was authorized to invest its surplus funds as specified therein. Chapter 88-326, Laws of Florida, rewrote s. 236.24, F.S., and added the language "unless otherwise authorized by law or ordinance." In interpreting statutes, legislative intent is the polestar by which a court must be guided.[2] An examination of the legislative history surrounding the enactment of Ch. 88-326, Laws of Florida, clearly indicates that the purpose of the legislation was "to allow district school boards to invest surplus funds in the same manner as counties and municipalities invest surplus public funds."[3]
This office has previously stated in AGO 87-32 that similar language in s. 166.261, F.S., authorized municipalities to adopt an ordinance permitting the investment of surplus municipal funds in securities which are not specifically enumerated in s. 166.261(1), F.S., subject to any restrictions imposed by provisions of special law or municipal charter. In light of the language of s. 236.24, F.S., district school boards would appear to possess similar powers.
You express concern that the language in s. 236.24, F.S., refers to "ordinance" and there are no provisions for the adoption of "ordinances" by the school board.[4] While the statute does not define the term "ordinance," it has been generally defined as a "rule established by authority; a permanent rule of action,"[5] or as "an authoritative decree or direction . . . a public enactment, rule, or law[.]"[6] As The Supreme Court of Florida stated in Certain Lots Upon Which Taxes Are Delinquent v. Town of Monticello,[7] "[a] `resolution' is an order of municipal council of a special and temporary character, while an `ordinance' prescribes a permanent rule of conduct for government."[8]
District school boards are authorized to adopt rules and regulations for the more orderly and efficient operation of the district school system. In the absence of statutory or legislative clarification, I am of the opinion that the term "ordinance" as used in s. 236.24, F.S., refers to a rule established by the school board as opposed to a resolution which by its nature is of a more temporary character.[9] Accordingly, inasmuch as an examination of the legislative history surrounding the amendment of s. 236.24, F.S., clearly indicates that the Legislature intended that school districts possess the same authority to invest surplus funs as exercised by counties and municipalities, I am of the opinion that a district school board has the authority to adopt an "ordinance," that is, take official legislative action of a general and permanent nature, pursuant to s. 236.24(2)(a), F.S., regarding the investment of surplus school funds.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Such investments include:
1. The Local Government Surplus Funds Trust Fund; 2. Negotiable direct obligations of, or obligations the principal and interest of which are unconditionally guaranteed by, the United States Government at the then prevailing market price for such securities; 3. Interest-bearing deposits or savings accounts in banks organized under the laws of this state, in national banks organized under the laws of the United States and doing business and situated in this state, in savings and loan associations which are under state supervision, or in federal savings and loan associations located in this state and organized under federal law and federal supervision, provided that any such deposits are secured by collateral as may be prescribed by law; 4. Obligations of the federal farm credit banks; the Federal Home Loan Mortgage Corporation, including Federal Home Loan Mortgage Corporation participation certificates; or the Federal Home Loan Bank or its district banks or obligations guaranteed by the Government National Mortgage Association; 5. Obligations of the Federal National Mortgage Association, including Federal National Mortgage Association participation certificates and mortgage pass-through certificates guaranteed by the Federal National Mortgage Association, or 6. Securities of, or other investments in, any open-end or closed-end management type investment company or investment trust registered under the Investment Company Act of 1940, 15 U.S.C. ss. 80a-1 et seq., as amended from time to time, provided the portfolio of such investment company or investment trust is limited to United States Government obligations and to repurchase agreements fully collateralized by such United States Government obligations, and provided such investment company or investment trust takes delivery of such collateral either directly or through an authorized custodian.
[2] See, In re Order on Prosecution of Criminal Appeals by Tenth Judicial Circuit Public Defender, 561 So.2d 1130 (Fla. 1990); Lowry v. Parole and Probation Commission, 473 So.2d 1248 (Fla. 1985).
[3] See, Final Staff Analysis Economic Impact Statement, Florida House of Representatives Committee on Education, K-12, on HB 449 (enacted as Ch. 88-326, Laws of Florida), dated June 10, 1988. And see, Ellsworth v. Insurance Company of North America,508 So.2d 395 (1 D.C.A. Fla., 1987) (appellate courts may consider legislative staff summaries in construing statutes); 82 C.J.S. Statutes s. 356 (reports and explanatory statements of legislative committees in charge of a bill, while not binding, may be resorted to as indicative of the intent of the Legislature).
[4] See, e.g., s. 166.041(1)(a), F.S., defining "[o]rdinance" as "an official legislative action of a governing body which action is a regulation of a general and permanent nature and enforceable as a local law."
[5] Black's Law Dictionary Ordinance 1248 (4th rev. ed. 1968).
[6] Webster's Third New International Dictionary Ordinance 1588 (unabridged ed. 1981).
[7] 31 So.2d 905 (Fla. 1947).
[8] Cf., s. 166.041(1)(a) and (b), F.S. respectively defining "Ordinance" and "Resolution."
[9] See, s. 230.22(2), F.S. And see, s. 230.23(10)(k), F.S. (1992 Supp.), authorizing the board to adopt policies pertaining to the investment of school funds not needed for immediate expenditures, after considering the recommendations of the superintendent, and making provisions for investing or placing on deposit all such funds in order to earn the maximum possible yield under the circumstances from such investments or deposits.