Ms. Cynthia S. Prettyman General Counsel Palm Beach County School District 3318 Forest Hill Boulevard West Palm Beach, Florida 33406-5813
Dear Ms. Prettyman:
On behalf of the Palm Beach County School Board, you ask substantially the following question:
Is a school district obligated to provide electronic public records in a format other than is routinely maintained by the district, and, if so, is it required to bear the cost of converting that information?
In sum:
A school district is not required to furnish its electronic public records in an electronic format other than the standard format routinely maintained by the district. However, if the district elects to provide such records in a different format, the costs of converting the information shall be borne by the requestor pursuant to section 119.07(1)(b), Florida Statutes (1996 Supplement).
You state that your school district has received a request from a newspaper for a copy of all records in the district's S.N.A.P. database system which is used by the district's school food service operations.[1] Both the school district and the newspaper have agreed that the information contained in the database system is a public record subject to disclosure.[2] The S.N.A.P. system, however, does not operate in American Standard Code for Information Interchange (ASCII) format and the newspaper has requested that the information be provided in an ASCII format or other generic spreadsheet format. The district which does not maintain the information in ASCII has determined that the cost of reproducing the information in an ASCII format would be approximately $4,400. To produce a hard copy of the information would cost approximately $4,428 at 15 cents per page.
According to your letter, however, "[a]ll District electronic records are maintained in EBCDIC format" which you state is a standard and common format for mainframe computers. The cost of reproducing the records requested by the newspaper in Extended Binary Coded Deminal Interchange Code (EBCDIC) format would be approximately $100. The newspaper, however, contends that Florida's Public Records Law requires that the district provide the information in ASCII format at the district's own expense, citing to sections 119.083(4) and (6), Florida Statutes, as authority for their position.
Section 119.083(4), Florida Statutes, provides:
"An agency must consider when designing or acquiring an electronic recordkeeping system that such system is capable of providing data in some common format such as, but not limited to, the American Standard Code for Information Interchange."
Subsection (4) was created during the 1995 legislative session and became effective July 1, 1995.[3] This office has been advised by the district that the system used by the district was acquired prior to the enactment of this subsection.[4] Subsection (4) does not require an agency to retrofit its existing computers but merely states that an agency, in designing or acquiring a system, must consider whether the system is capable of providing the data in a common format. Moreover, it appears that EBCDIC is a standard encoding scheme used primarily by IBM mainframe computers and other computers.[5]
Subsection (6) of section 119.083, Florida Statutes, has also been mentioned as the basis for requiring the district to produce at its own expense the records in ASCII format. Subsection (6), which was also created by Chapter 95-296, Laws of Florida, pro-vides:
An agency may not enter into a contract for the creation or maintenance of a public records database if that contract impairs the ability of the public to inspect or copy the public records of that agency, including public records that are on-line or stored in an electronic recordkeeping system used by the agency.
As noted above, the EBCDIC format used by the school district, while not compatible with PC computers, appears to be a standard format for mainframe computers. Moreover, an examination of the legislative history surrounding the enactment of subsection (6) indicates that the purpose of this language was to prevent "using a third party for handling and storing public records of an agency and then refusing to provide access to those records because the third party is not an `agency' subject to Chapter 119, F.S."[6]
While Chapter 119, Florida Statutes, reflects an intent that providing access to public records is a duty of each agency and the automation of such records must not erode the right of access, neither Chapter 119 nor section 119.083, Florida Statutes, requires agencies to incur additional costs to convert their existing electronic records which are maintained in their computer data system in a standard format into another format.[7] The Public Records Law provides access to existing records; it does not ordinarily require an agency to reformat its records and provide them in a particular form. As explained in Siegle v.Barry,
"It is not the intent of [Chapter 119] to put public officials in the business of compiling charts and preparing documentary evidence. The intent is rather to make available to the public information which is a matter of public record, in some meaningful form, not necessarily that which the applicant prefers."[8]
Thus, an agency is not generally required to format its records to meet a requestor's needs.
Subsection (5) of section 119.083, Florida Statutes, would appear to govern the situation in the instant inquiry. That subsection, which was part of the 1995 amendment to section 119.083, provides:
"Each agency that maintains a public record in an electronic recordkeeping system shall provide to any person, pursuant to this chapter, a copy of any public record in the system which is not exempted by law from public disclosure. An agency must provide a copy of the record in the medium requested if the agency maintainsthe record in that medium, and the agency may charge a fee which shall be in accordance with this chapter. For the purpose ofsatisfying a public records request, the fee to be charged by anagency if it elects to provide a copy of a public record in a medium not routinely used by the agency or if it elects to compile information not routinely developed or maintained by the agency or that requires a substantial amount of manipulation or programming must be in accordance with s. 119.07(1)(b)."[9] (e.s.)
The above statute requires an agency to provide a copy of the record in the requested format only if the agency maintains the record in that format. The district does not maintain the requested record in ASCII format but maintains the information in a format standard for mainframe computers. Pursuant to subsection (5), if the agency elects to provide a copy of the record in a medium not routinely used by the agency or if it requires a substantial amount of manipulation or programing, the fee to be imposed is that prescribed in section 119.07(1)(b), Florida Statutes (1996 Supplement).[10]
Accordingly, I am of the view that a school district is not required to furnish its electronic public records in an electronic format other than the standard format routinely maintained by the district. However, if the district elects to provide such records in a different format, the costs of converting the information shall be borne by the requestor pursuant to section 119.07(1)(b), Florida Statutes (1996 Supplement).
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] The school board attorney has advised that the district has previously supplied the newspaper with portions of the information contained in the database system but the newspaper has now requested a copy of all records contained in the system.
[2] See, s. 119.011(1), Fla. Stat. (1996 Supp.), defining "[p]ublic records" to include data processing software and establishing that a record made or received in connection with official business is a public record, regardless of the physical form, characteristics, "or means of transmission." And see, Seiglev. Barry, 422 So.2d 63, 65 (Fla. 4th DCA 1982), review denied,431 So.2d 988 (Fla. 1983) ("There can be no doubt that information stored on a computer is as much a public record as a written page in a book or a tabulation in a file stored in a filing cabinet"); Ops. Att'y Gen. Fla. 91-61 (1991) (computer data software disk is a public record); 89-39 (1989) (information stored in computer utilized by county commission to facilitate and conduct official business is subject to Ch. 119, Fla. Stat); and 85-3 (1985) (computer tapes are public records).
[3] See, ss. 7 and 9, Ch. 95-296, Laws of Florida.
[4] Cf., Inf. Op. to James T. Moore, October 19, 1993, noting that an agency considering the acquisition of computer software should be responsive to the need for preserving public access to information through the computer's software and that the design and development of such software should, therefore, ensure that the system has the capability of redacting confidential or exempt information when a public records request is made. In the instant inquiry, however, the parties have apparently agreed that the requested information is a public record subject to disclosure; the issue of the system's capability to redact is not, therefore, an issue.
[5] See, Glossary of Selected Computing and Social Science Terms, http://odwin.ucsd.edu/glossary/glossary.html ("A character encoding scheme used by IBM mainframe computers and some other computers. Unlike ASCII, the EBCDIC standard specifies use of the entire 8 bits of each byte"); ESnet Glossary of Networking Terms,http://www.es.net/hypertext/guides/network-glossary.html ("A standard character-to-number encoding used primarily by IBM computer systems. See also ASCII"); and see, Ralston and Reilly,Encyclopedia of Computer Science (3d edition).
[6] See, Final Bill Analysis Impact Statement on CS/HB 1149, Florida House of Representatives, as revised by the Committee on Governmental Operations, dated June 16, 1995 (Staff Analysis). Andsee, Ellsworth v. Insurance Company of North America,508 So.2d 395 (Fla. 1st DCA 1987) (appellate courts may consider legislative staff summaries in construing statutes); cf., 82 C.J.S. Statutes
s. 356 (reports and explanatory statements of legislative committees in charge of a bill, while not binding, may be resorted to as indicative of the intent of the Legislature).
[7] In discussing the fiscal impact on government agencies, the Staff Analysis, supra, states that only negative fiscal impact on government caused by the bill made be an indeterminate amount due to changing the fee imposed for electronic access from a mandatory fee to an optional fee.
[8] 422 So.2d 63, 66 (Fla. 4th DCA 1982), review denied,431 So.2d 988 (Fla. 1983).
[9] And see, Seigle v. Barry, supra, in which the court stated:
"We, therefore, adopt the rule that access to computerized records shall be given through the use of programs currently in use by the public official responsible for maintaining the public records. Access by the use of a specially designed program prepared by or at the expense of the applicant may obviously be permitted in the discretion of the public official and pursuant to Section119.07(1). In the event of refusal of the public official to permit access in this manner, the circuit court may permit access pursuant to the same statutory restraints where:
(1) available programs do not access all of the public records stored in the computer's data banks; or
(2) the information in the computer accessible by the use of available programs would include exempt information necessitating a special program to delete such exempt items; or
(3) for any reason the form in which the information is proffered does not fairly and meaningfully represent the records; or
(4) the court determines other exceptional circumstances exist warranting this special remedy."
[10] See, s. 119.07(1)(b), Fla. Stat. (1996 Supp.), providing that if the nature or volume of the records requested is such as to require extensive use of information technology resources or extensive clerical or supervisory assistance, or both, an agency may charge in addition to the actual cost of duplication, a special service charge which shall be reasonable and based on the cost incurred for such use of information technology resources or the labor costs of the personnel providing the services or attributable to the agency for the clerical and supervisory assistance.