CAMPBELL, MONTEREY, (Senior) Judge.
Appellants, Benny Joe and Kammi Hooper, challenge the partial summary judgment entered in favor of appellee, Zurich Insurance Company. We affirm.
Zurich issued a motor vehicle liability insurance policy to Terminix. Benny Hooper, an employee of Terminix, was injured in an automobile accident while acting in the scope and course of his employment with Terminix. Mr. Hooper was a passenger in an automobile not owned by Termi-nix but by a fellow Terminix employee (Kenneth House), who was also acting in the course and scope of his employment with Terminix. Mr. Hooper asserts that *369 he is entitled to UM benefits under section 627.727, Florida Statutes (1995).
Section 627.727(1), in pertinent part, provides:
Section 627.727 Motor vehicle insurance; uninsured and underinsured vehicle coverage; insolvent insurer protection. — (1) No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom.
(Emphasis supplied.)
The trial judge, by the partial summary judgment entered for Zurich, determined that section 627.727 was not applicable to afford Mr. Hooper UM coverage because Mr. House’s vehicle was not “specifically insured or identified” by Terminix’s policy with Zurich. We agree. Section 627.727 was amended in 1984. The amendment added to the statute the “specifically insured or identified motor vehicle” requirement. Mr. Hooper argues that the amendment was to limit the reach of the existing statute and thereby protect providers of comprehensive general liability and umbrella/excess policies from being drawn into coverage requirements intended to be applicable only to motor vehicle policies.
The legislative analyses and history of the 1984 amendment to section 627.727 provides some credence to Mr. Hooper’s argument. The Senate Staff Analysis of April 1, 1984, for CS/SB 0243, provides in part as follows:
The bill provides that uninsured motorist coverage need not be provided for policies which do not provide primary liability coverage for a specifically insured motor vehicle, (e.g., umbrella, excess liability policies), unless the insured makes a written request for uninsured motorist coverage up to the bodily injury liability limit contained in such policies.
The House of Representatives Final Staff Analysis of June 21, 1984, for CS/HB 319 provides in part as follows:
The present statute does not specifically address the type of general liability policy usually issued to a business, which covers many types of legal liability, including motor vehicle liability, but which policy does not refer to specific vehicles. Nor does the statute specifically address umbrella or excess policies which provide liability coverage in excess of the primary coverage for a fleet of vehicles owned or used by a business. In these situations it has generally been held that if uninsured motorist coverage is not rejected in writing, such coverage is deemed to be provided up to the limits of bodily injury liability purchased.
* * * *
The bill limits the applicability of the uninsured motorist requirements to liability policies covering specifically insured or identified motor vehicles. This would exempt from the statute’s requirements comprehensive general liability policies or special multi-peril policies which provide coverage for many types of liability of an insured (usually a business) but which do not specifically identify vehicles that are covered. The bill also limits the applicability of the written rejection and minimum limit re *370 quirements to policies providing primary liability coverage for a motor vehicle. Therefore, such requirements would not apply to excess or umbrella-type policies which may cover specific vehicles, but which provide excess coverage over a layer of primary coverage. However, the insurer issuing such excess policies must make available as part of the application and at the written request of the insured, UM limits up to the bodily injury liability limits contained in such policies.
In interpreting statutory enactments, however, we are required to examine and apply the plain wording and meaning of a statute. Shelby Mut. Ins. Co. v. Smith, 556 So.2d 393 (Fla.1990). Section 627.727 is not limited in its application to comprehensive general liability or umbrella/excess policies. In fact, the statute mentions neither but refers instead to “motor vehicle liability insurance” policies. We therefore conclude that Mr. House’s vehicle was not a “specifically insured or identified” vehicle under Zurich’s policy insuring Terminix so as to entitle Mr. Hooper to UM coverage under section 627.727. In doing so, we observe that while not pertinent to their decisions, the First and Third Districts, in dicta, apparently agree with the interpretation of section 627.727 by the trial judge and this court. See Ellsworth v. Ins. Co. of N. Am., 508 So.2d 395, 400-01 (Fla. 1st DCA 1987), and Auto. Ins. Co. of Hartford, Conn. v. Beem, 469 So.2d 138, 140-41 (Fla. 3d DCA 1985). See also United Services Auto. Ass’n v. Roth, 744 So.2d 1227 (Fla. 4th DCA 1999).
Affirmed.
PATTERSON, C.J., and SILBERMAN, J., concur.