NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-southern judicial district
No. 2022-0237

LAURIE A. ORTOLANO

v.

CITY OF NASHUA

Argued: March 21, 2023
Opinion Issued: August 18, 2023
Opinion Modified: October 10, 2023

Laurie A. Ortolano, self-represented party, on the brief and orally.

Office of Corporation Counsel, of Nashua (Celia K. Leonard, Steven A. Bolton, and Nicole M. Clay on the brief, and Celia K. Leonard orally), for the City.

New Hampshire Municipal Association, of Concord (Jonathan E. Cowal on the memorandum of law), as amicus curiae.

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Matthew Broadhead, senior assistant attorney general, and Samuel

Burgess, attorney, on the brief, and Matthew Broadhead orally), for the State of New Hampshire, as amicus curiae.

Gary A. Braun, self-represented party, on the brief and orally, as amicus curiae.

Dana Albrecht, self-represented party, on the brief, as amicus curiae.

MACDONALD, C.J.  The City of Nashua (the City) appeals an order of the Superior Court (Temple, J.) granting the petition of Laurie Ortolano compelling the City to conduct a reasonable search of its back-up tapes for records in response to Ortolano's Right-to-Know Law request.  See RSA 91-A:4, I (Supp. 2022).  We affirm and remand.

I.    Background

The following facts are supported by the record. On June 16, 2021, Ortolano submitted an email request to the City's Director of Administrative Services Kimberly Kleiner seeking access to specified correspondence under the Right-to-Know Law.  See RSA ch. 91-A.  The request asked for all emails sent and received by the following current and former City employees: Louise Brown, between November 1, 2020 and her last day of work, December 25, 2020; Amanda Mazerolle, between November 1, 2020 and March 7, 2021; and Karina Ochoa, between November 1, 2020 and March 7, 2021.  The City replied on June 23, 2021 informing Ortolano that Mazerolle and Ochoa would both conduct reasonable searches for records matching Ortolano's descriptions and that Ortolano would receive an update or response by July 16, 2021.  The City stated that it no longer had "reasonable access to Ms. Brown's emails from the time of her employment."

Following the City's response, Ortolano filed suit against the City on July 19, 2021.  On September 3 and 17, the City sent Ortolano the records pertaining to Mazerolle and Ochoa.  Also on September 17, 2021, Ortolano requested additional records, including "copies of emails to Louise Brown from Karina Och[oa], Kim Kleiner, John Griffin, Gary Turgiss, Greg Turgiss, Mike Mandile, Doug Dame, Lindsey (the new office clerk) and Amanda Mazerolle for the time period of November 1, 2020 through her last day of work for the City of Nashua."  The City replied that it would not reproduce emails already produced in response to Ortolano's earlier request, but would conduct reasonable searches for emails sent between Brown and the other named individuals between November 1 and December 25, 2020.  The City told Ortolano to expect a response or update by October 18, 2021.  On October 29,

2021, the City provided Ortolano with emails located by Kleiner from a search of her personal email that were sent to or from Brown during the requested time period.

In December 2021, the trial court held a bench trial on Ortolano's petition seeking access to the requested records. The court heard testimony from Kleiner, Brown, and the City's Deputy Director of Information Technology (IT) Nick Miseirvitch. Miseirvitch testified regarding the City's email retention policy and the systems that were in place to permanently store employee documents. Specifically, he testified that emails in Outlook are automatically deleted after a specific period of time has elapsed. This timeframe was initially 45 days, increased to 90 days at the onset of the COVID-19 pandemic, and again increased to 120 days in the summer of 2020. By the time Ortolano requested Brown's emails, more than 120 days had passed since Brown left employment with the City. Any emails in Brown's Outlook account, therefore, had already been automatically deleted. Miseirvitch also testified that employees are advised to move important emails to their personal U-drives to permanently save them as PST (Personal Storage Table) files, which are not subject to the same automatic deletion as emails in Outlook. Kleiner testified that, at the time of Ortolano's request, there were not any PST files on Brown's U-drive. Brown testified that while she did regularly correspond over email as part of her job, she did not regularly save emails to which she was a party on the U-drive. She testified that she did save some emails that were forwarded to her when she was requested to do so.

Miseirvitch further testified that files not located in Outlook or on a U-drive may still be accessed via the City's back-up tapes, derived from regular system back-ups. He testified that it is possible to convert records from these back-up tapes into a readable format and search them. He specified that for a back-up that occurred approximately five months ago (the timeframe relevant to Ortolano's request), the conversion process would add "a couple of hours" to the time it takes to search for responsive documents. A search of the back-up tapes was not performed in response to Ortolano's record requests.

In February 2022, the trial court ordered the City to conduct a reasonable search of its back-up tapes for responsive records. As noted by the trial court, the City "claim[ed] that it met its requirement under RSA 91-A by looking for emails in Ms. Brown's Outlook application and her personal U-drive and it was not required under RSA 91-A:4, III(b) to search the City's backup tapes because such tapes are not 'readily accessible' as defined by the statute." The trial court found that "it is undisputed that the City's backup tape system exists, can be searched, and that files such as those requested by the petitioner are retrievable from the backup tapes." The court concluded that it "has no difficulty finding that the emails the petitioner seeks are readily accessible and that no practical obstacle to their retrieval exists," a finding that "is firmly rooted in the credible testimony of Mr. Miseirvitch."

3

The trial court also ordered the City to participate in remedial training, finding that "future violations can best be avoided through requiring participation in remedial training regarding the City's compliance with Right-to-Know Law records requests." The court ordered that "[t]he parties shall submit memoranda within 30 days of the Clerk's notice of this Order addressing their respective proposals regarding the nature and duration of this remedial training."

The City filed a motion for reconsideration, which the trial court denied. Regarding remedial training, the trial court noted in its denial that it will "make a final decision on the nature and scope of the training and identify the specific officers, employees, or other public officials subject to such remedial measures" following the parties' submission of memoranda. This appeal followed.

II.    Analysis

We note that the trial court has not yet ruled on the specific details of the City's remedial training, as the City filed this appeal prior to the trial court's deadline for submitting memoranda on this issue. Accordingly, this appeal would appear to be interlocutory. See Shelton v. Tamposi, 164 N.H. 490, 495 (2013). To the extent that it may have been interlocutory when we accepted the appeal, we waive the requirements of Supreme Court Rule 8, see Sup. Ct. R. 1, and now consider the appeal on its merits. See id.

Part I, Article 8 of the New Hampshire Constitution provides that "the public's right of access to governmental proceedings and records shall not be unreasonably restricted." The Right-to-Know Law states that "[e]very citizen . . . has the right to inspect all governmental records . . . except as otherwise prohibited by statute or RSA 91-A:5." RSA 91-A:4, I. "The purpose of the Right-to-Know Law is to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." CaremarkPCS Health v. N.H. Dep't of Admin. Servs., 167 N.H. 583, 587 (2015) (quotation omitted). "Although the statute does not provide for unrestricted access to public records, we resolve questions regarding the Right-to-Know Law with a view to providing the utmost information in order to best effectuate these statutory and constitutional objectives." Id. (quotation omitted). "As a result, we broadly construe provisions favoring disclosure and interpret the exemptions restrictively." Id. (quotation omitted). "The party seeking nondisclosure has the burden of proof." Id. (quotation omitted).

We defer to the trial court's findings of fact if they are supported by the evidence and are not erroneous as a matter of law. Provenza v. Town of Canaan, 175 N.H. 121, 124 (2022). We review the trial court's interpretation of statutes, including the Right-to-Know Law, de novo. Id.

4

RSA 91-A:4, III-b provides an exemption for the disclosure of records in electronic form:

> A governmental record in electronic form shall no longer be subject to disclosure pursuant to this section after it has been initially and legally deleted. For purposes of this paragraph, a record in electronic form shall be considered to have been deleted only if it is no longer readily accessible to the public body or agency itself. The mere transfer of an electronic record to a readily accessible "deleted items" folder or similar location on a computer shall not constitute deletion of the record.

On appeal, the City first challenges the trial court's determination that the requested emails located on the back-up tapes are "readily accessible" to the City. The City contends that although records on the back-up tapes may be accessible to the City's IT Department, they are not "readily accessible" to the City's Assessing Department because each department is a separate "public agency" as defined under the Right-to-Know Law. See RSA 91-A:1-a, V (2023). However, our review of the record indicates that the plaintiff's Right-to-Know request was directed to the City, not to any specific department. Moreover, the record shows that the City treated the request as one for any public records that any department of the City has, which would include records "readily accessible" to both the IT and Assessing Departments. Under these circumstances, where the record demonstrates that the requested emails are "readily accessible" to the City through the services of the IT Department, the trial court did not err in determining that the requested emails located on the back-up tapes are "readily accessible" to the City.

We find compelling, as did the trial court, Miseirvitch's testimony that he previously conducted a back-up tape retrieval in response to a Right-to-Know request for emails of the former Chief of the Assessing Department. Miseirvitch testified in detail about the process of restoring back-up tapes and searching the contents of the restoration for specific records, such as emails. Miseirvitch also testified that it would only take "a couple of hours" to restore the back-up tapes before being able to search for Brown's emails in this particular case, and that he regularly has to go back to the back-up tapes "once every couple of months." He explained that "[i]f a city employee feels that something was deleted out of the S drive a year ago, we could go in and look for the folder and file to see if it was indeed there a year ago and restore it as needed." Moreover, the trial court found that "it is undisputed that the City's backup tape system exists, can be searched, and that files such as those requested by the petitioner are retrievable from the backup tapes."

This process of restoring and searching back-up tapes is far from the "speculative, time-consuming fishing search" alleged by the City, particularly

5

since the trial court found that "there is no dispute that [Ortolano] reasonably described Ms. Brown's emails in her original records request."  Contrary to the City's assertion, the record shows that these back-up tapes are not used solely "to ensure City government can function in the event of a catastrophic event"; rather they are easily accessible to the City's IT Department, and, in fact, have been regularly accessed by the Department — on at least one occasion for the purpose of responding to a Right-to-Know request.  Given these circumstances, including the fact that it would take only "a couple of hours" to restore the back-up tapes to enable a search of Brown's emails, we conclude that the trial court did not err in finding that the requested emails on the back-up tapes are "readily accessible" to the City.

The City also contends that the trial court erred by failing to specifically consider whether Brown's emails were "initially and legally deleted" under RSA 91-A:4, III-b.  The statute specifies that "a record in electronic form shall be considered to have been deleted <u>only if it is no longer readily accessible</u> to the public body or agency itself."  RSA 91-A:4, III-b (emphasis added).  Because the trial court found that the emails were "readily accessible" to the City, the emails were therefore not "initially and legally deleted" within the meaning of RSA 91-A:4, III-b.  This finding is implicit in the trial court's order.

Regarding other relief granted to Ortolano, the City argues that the trial court erred in ordering the City to engage in remedial training without identifying who was to receive the training or what the training would entail.  The Right-to-Know Law includes several remedies, such as attorney's fees and costs.  See RSA 91-A:8 (2013).  RSA 91-A:8, V provides that "[t]he court may also enjoin future violations of this chapter, and may require any officer, employee, or other official of a public body or public agency found to have violated the provisions of this chapter to undergo appropriate remedial training, at such person or person's expense."  In its order, the trial court stated that "[t]he parties shall submit memoranda within 30 days of the Clerk's notice of this Order addressing their respective proposals regarding the nature and duration of this remedial training."  When the City challenged the trial court's discussion of the training, the trial court responded that "the remedial training order has yet to issue in this case" and that such details would be clarified after the parties submitted their memoranda.  Thus, we conclude that the trial court did not commit reversible error in asking for supplemental memoranda before planning to issue a separate order addressing the specific details of the training.

The City further argues that the trial court erred in ordering remedial training because "[t]he New Hampshire Municipal Association routinely supplies trainings relative to RSA Chapter 91-A" and "[t]he material on its website offer the same interpretation of RSA 91-A:4, III-b that the City argues here," thus making remedial training under these circumstances "not necessary."  However, we decline to decide this issue because a final ruling has

not yet been made on the City's remedial training.  See Germain v. Germain, 137 N.H. 82, 84 (1993) ("Generally, when a trial court issues an order that does not conclude the proceedings before it, for example, by deciding some but not all issues in the proceedings . . . we consider any appeal from such an order to be interlocutory").

Accordingly, we affirm the trial court's decision granting Ortolano's petition and remand for further proceedings consistent with this opinion.

Affirmed and remanded.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.